THE CITY OF KANSAS to the use of JAMES G. ADKINS, Appellant, v. WALTER B. RICHARDS *et al.*, Respondents.

| 34 | 521 |
|---|---|
| a156s545 | |

Kansas City Court of Appeals, March 4, 1889.

**Municipal Corporations:** CHARTER OF KANSAS CITY: CONSTRUCTION OF: ORDINANCE MAKING DISTRICT SEWER LARGE ENOUGH TO RECEIVE SEWERAGE OF SURROUNDING DISTRICTS: UNREASONABLENESS OF: TAX BILLS FOR: UNEQUAL TAXATION: DISCRETION OF COMMON COUNCIL. The charter of Kansas City provides for a general sewer system, which shall be divided into public, district, and private sewers, and that a district sewer might be connected with a public sewer or another district sewer or with the natural course of drainage; and be of such dimensions as may be prescribed by ordinance with all necessary laterals, inlets and other appurtenances required. *Held—*

(1) That the size and capacity, direction and length of the district sewers, were wisely confided to the discretionary power of the common council.

(2) That an ordinance, providing that the sewer of a certain district should be much larger than was necessary for the drainage of said district (thereby increasing the cost of construction three times) in order to receive the drainage of three adjoining districts, whose sewers connected with this sewer and emptied into it, but not of greater capacity than was required in performing the office of receiving sewer for the other districts with which it was connected, is within and not in excess of the power conferred by the charter.

(3) When the common council has for many years construed the charter as authorizing an enlarged capacity of district sewers, where they became receiving sewers, and such construction has been acquiesced in until seventy-five per cent. of the district sewers are so enlarged, such construction ought not be overthrown on any questionable grounds.

(4) With the question of the unreasonableness or oppressiveness of a city ordinance passed in strict pursuance of an express grant of authority from the legislature, the courts have nothing to do.

(5) That when there is an absence of constitutional prohibitory or restrictive provisions, it is not in the power of the courts. to enforce any fancied scheme of equality of taxation seeming to them more just than the one adopted by the legislature, the latter department of the government being wisely intrusted with the entire control of the subject.

(6) That whether a contemplated. improvement within a municipal corporation partaking in nearly equal proportions of a benefit to the public and a special benefit to the property of a local district ought to be made a public charge, or be made at the expense of the property specially benefited, is a question for the discretion of the governing power of the municipality and this discretion, when exercised, is not the subject of review by the courts.

*Appeal from the Jackson Circuit Court.*—Hon. TURNER A. GILL, Judge.

REVERSED AND REMANDED.

*Karnes & Krauthoff*, for appellant.

(1) The sewer in controversy in this case was built connecting with the Missouri river, and as a matter of course had to be constructed larger in consequence of the fact that it was to receive the drainage from other sewer districts, and, if it was so intended, then it was no more than reasonable in size to carry out the purposes of its construction. (2) The doctrine of unreasonableness, as announced in *Corrigan v. Gage*, 68 Mo. 541, cannot be invoked in this case. It is not contended but that there was a necessity for that sewer. Neither is it contended that the sewer was too large, provided that it was to receive the discharge from other district sewers in the adjacent districts. Had there been no necessity for a sewer; had there been no people living in sewer district 46 ; and had it been impossible for other districts to connect therewith ; then, in such cases, the question of the unreasonableness of the ordinance might

be properly raised. Cooley's Con. Lim. 164; *City of St. Louis v. Green*, 7· Mo. App. 468; *City of St. Louis v. Knox*, 7 Mo. App. 247; *Neier v. Railroad*, 12 Mo. App. 25. Was it unreasonable to construct this sewer as seventy-five per cent. of the sewers of the city are constructed? Three other districts discharge into it and with the authority in the city to make such connections, will the court say this was unreasonable? The finding of the court was not that the size of the sewer was unreasonable if other district sewers were to connect with it, but the instruction was based upon the idea that the city had no right to entail this increased expense on this district. (3) The charter provides for connecting district sewers. The ordinance in this case contemplated the connection with this sewer by other district sewers. "The charter of a city bears the same relation to an ordinance of a city that the constitution of a state bears to its statutes." *Quinette v. City of St. Louis*, 76 Mo. 402. "Municipal ordinances and the state statutes are from a common source of authority, one class presents it in the delegated and the other in the direct form, but it is the power of the state that speaks in both." *State v. VicDeBar*, 58 Mo. 395. The passage of this ordinance establishing sewer district number 46, and ordering the construction of this sewer of such a size, was the exercise under the authority ·of the charter of legislative power, and not subject to the control of the courts. *McCormick v. Patchin*, 53 Mo. 33; *Keating v. City of Kansas*, 84 Mo. 415; *Miller v. Anheuser*, 2 Mo. App. 168; *Ruggles v. Collin*, 43 Mo. 353; *City of St. Louis v. Oeters*, 36 Mo. 456; *City of St. Louis v. Stern*, 3 Mo. App. 48; *Gibony v. City of Cape Girardeau*, 58 Mo. 141; Welty on Law of Assessments (1 Ed.) secs. 308, 309; *Fagan v. City of Chicago*, 84 Ill. 231; *Brewster v. Davenport*, 51 Ia. 427; *Cook v. Slocum*, 27 Minn. 513. So whatever view may

be taken as to the other questions, we feel confident that a judgment for the defendants must be erroneous.

*C. O. Tichenor*, for respondents.

(1) The record raises but two questions. (*a*) Has the city the power to issue tax bills to pay for a public sewer, and if not, then, (*b*) Was there any evidence to support the finding of the court that this sewer was a public one? (2) The public sewer is not for the benefit of one district, but of many districts, to-wit, the public. It is built with this object in view. Its length depends upon the will of the city. (3) Counsel say the defense is that the sewer is too large. This is not so. It is that the sewer was designed by the city to be, and actually was, not a district sewer, for which the district could be held liable, but a public sewer, for which it could not be. The argument of counsel is that the division of sewers into classes has no force. That a public sewer is a private, or district sewer, in case it is so styled by ordinance. That if a sewer is christened by the council, courts must sanction it. (4) "Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract, or incur any liability not authorized thereby. All acts beyond the scope of the powers granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute." 1 Dill Mun. Corp. ( 3 Ed.) sec. 89 ; *Kiley v. Oppenheimer*, 55 Mo. 376 ; *Leach v. Cargill*, 60 Mo. 316 ; *City v. Whipple*, 71 Mo. 519 ; *City v. Swope*, 79 Mo. 446 ; *City v. Ratekin*, 30 Mo. App. 416. (5) "Local taxes for local improvements are merely assessments upon the property benefited by such improvements, and to pay for the benefits which they are supposed to confer ; the lots are increased in value or better adapted to the uses of town lots by the

improvement. Upon no other ground will such partial taxation for a moment stand  *  *  *. The sole object then of a local tax being to benefit local property, it should be a charge upon that property only."

. SMITH, P. J.—This was a suit in the name of the City of Kansas to the use of Adkins against defendants upon certain district sewer tax-bills. The petition contains twelve counts and is based upon twelve separate tax-bills which were issued by the City of Kansas to one James Pryor, as contractor, and by successive assignments passed to, and became the property of, the said Adkins. Said tax-bills were issued in pursuance of ordinance number 21757 of the City of Kansas for the building of a sewer in sewer district number 46. After the completion of the work the city engineer issued the tax-bills.

The answer contained, as first filed, several defenses, but the one upon which the case was tried was, in substance, that while the sewer for which said tax-bills were issued was called a district sewer, it was in fact a public sewer; that it was built five feet in diameter, inside measurement, with nine-inch walls, so that the sewerage of large tracts of land outside of sewer district number 46 might be drained therein; that it was so built for the purpose of connecting sewers of other districts therewith, so that said other sewers might thereby empty into the Missouri river; and it is further said therein that it does not in fact drain sewer districts numbered 47, 49 and 53, the area of which said districts is three times greater than that of district 46, and that a sewer of two feet, or less, in diameter would have been sufficiently great to drain said sewer district 46; that it would not have been built of a greater size had it not been intended to drain said other sewer districts, and that had the sewer been constructed of only the diameter

of two feet it would have cost less than three-tenths of the sum for which the tax-bills were issued under the contract mentioned in the petition ; and on this the case was tried.

The plaintiff, to sustain the issues on his part, simply read the tax-bills, which made a *prima-facie* case, as provided under the charter. The defendants then offered in evidence the contract, specifications and ordinance under which the sewer was built and which showed that the sewer was contracted to be constructed "of hard-burned brick laid in cement mortar, of circular form, with walls nine inches in thickness and of five feet inside diameter." The defendants then offered as witnesses Howard M. Holden, D. S. Patterson, T. W. Tuttle, James A. Tiernan, John Donnelly and W. B. Knight, all of whom testified that this sewer was larger than was necessary for the drainage of sewer district number 46, and that there were three other sewer districts connecting with it and discharging their sewerage through this sewer in district 46 ; and the testimony of Donnelly, Knight and Tiernan was to the effect that they had been officially connected with the engineering department of the City of Kansas and that said sewer was so constructed of a greater size than was necessary to drain sewer district number 46 for the reason that it was contemplated that other sewer districts should empty into it, and for that reason it became necessary to construct it of an enlarged capacity ; that this sewer cost $6.82 per linear foot, when one sufficient for the district could have been constructed for $2.20 per foot ; but their testimony was substantially to the effect that, if the other district sewers were to be emptied into this sewer as contemplated, it was no larger than was reasonably necessary for the several sewer districts.

On that state of facts the court upon its own motion declared the law as follows : "If the sewer in controversy was designed and constructed by the City of Kansas not alone to drain the said sewer district, but was designed and constructed four to five times as large as was needed for that purpose so as to furnish an outlet and drain for several other district sewers, then intended to be constructed and drained into the sewer in controversy, and that the said sewer thus designed and constructed entailed an excess of cost of four or five times what was needed on the property in said sewer district, and if the intention of thus constructing this large sewer at the expense of this sewer district was to provide in fact a public sewer at the cost of a single sewer district, then plaintiff cannot recover on the tax-bills in suit. The court finds from the evidence the the above facts and declares thereon that the plaintiff cannot recover."

The plaintiff asked the court to declare the law to be :

*First.* "That although the tax-bills sued for in this case covered, in addition to defendant's property, also the railroad track and strip of ground lying north of said railroad and said strip belonged to other parties and not to defendants, still this can constitute no defense provided the plaintiff offered to remit from such bills an amount bearing the same relation to the whole as the track and strip taken together would bear to the whole amount of the land so covered by said bills."

*Second.* "If the common council established this sewer district and directed this sewer to be built therein as a district sewer and if the same was built larger than was necessary to drain said district, then this can constitute no defense to these tax-bills."

*Third.* "Although it may appear that the sewer was larger and more expensive than was necessary to

drain said district, this does not warrant the defeat of these tax-bills."

*Fourth.* "There is no evidence in this case that the contractor in doing this work had any knowledge that it was the intention of the city in constructing this large sewer at the expense of this sewer district to provide in fact a public sewer at the cost of a single sewer district, other than from its size."

The first and fourth of these instructions the court gave, and refused the second and third. The first was based upon a state of facts which constituted one of the defenses to the tax-bills, but not the one upon which the case was determined, and therefore is of no importance in the consideration of this case.

Afterwards in due time the motion for a new trial was filed and overruled. This case is brought here by appeal.

The question we have to decide is whether the said tax-bills sued upon are valid.

This depends upon whether the passage by the common council of the City of Kansas of said ordinance number 21757, providing for the building of said sewer in district number 46, was an authorized exercise of municipal power under the provisions of the charter of that city. It seems that this sewer was constructed so as to connect with the natural course of drainage and with a view of connecting it with the sewers from other adjacent districts lying more remotely from the base of drainage. Constructed with this view it was made necessarily much larger and more expensive than it otherwise would have been, had it been limited in the design of its construction to a size only large enough to drain the territory embraced within the boundaries of the district.

As we understand it there is no question made but that the city may, under the power conferred by its charter, provide for the establishment of sewer districts

and for the construction of sewers therein ; but the power
to build therein a sewer of greater capacity than is nec-
essary to drain the district, or to build one therein large
enough to receive and carry the drainage of other dis-
tricts adjacent thereto whose sewers may connect there-
with, is disputed.    The power of the city of Kansas is
derived from the state through a legislative charter.

The provisions of this charter authorizing a sewer
system are quite elaborate.    Section 1, article 9, of
said charter provides that "The common council shall
have power to cause a general sewer system to be estab-
lished, which shall be divided into three classes, to-wit :
public, district and private sewers.

Public sewers shall be established along the princi-
pal courses of drainage at such times, to such extent,
of such dimensions, and under such regulations as may
be provided by ordinance," etc.    It is further provided in
this section that the common council shall levy a tax on
all property made taxable for state purposes over the
whole city to pay for the construction of the public
sewers.    Section 2 further provides that "District sew-
ers shall be established within the limits of the districts
to be described by ordinance connecting with a public
sewer, or other district sewer, or with the natural course
of drainage as each case may be,    *    *    *.

"The common council shall cause sewers to be con-
structed in each district whenever a majority of the
property holders, residents therein shall petition there-
for, or whenever the common council may deem such
sewer necessary for sanitary or other purposes ; and said
sewer shall be of such dimensions as may be prescribed
by ordinance and may be changed, enlarged or extended,
and shall have all the necessary laterals, inlets and other
appurtenances which may be required.    As soon as the
district sewer shall have been completed the city engi-
neer, or other officer having charge of the work, shall

compute the whole cost thereof and shall assess it as a special tax against the lots of ground in proportion to the area of the whole district, etc., and such officer shall make out a certified bill of such assessment against each lot of ground within the district in the name of the owner thereof, which shall be delivered to the contractor for the work who shall proceed to collect the same by ordinary process of law, in the name of the city to his own use—said certified tax-bill is made *prima-facie* evidence of the validity of the charges against the property therein described and the liability of the person therein named as the owner of such property."

Nothing need be said here respecting private sewers as there is no question about them.

The city by ordinance number 21757, entitled "an ordinance to create and establish sewer district number 46, and to establish and construct a part of a district sewer therein, approved December 6, 1881, provided for the construction of the sewer in controversy."

There is no complaint of any irregularity in the passage of said ordinance which in specific terms named the boundaries of the district and the size of the sewer, the materials of which it was to be constructed, and all the details connected therewith.

It is conceded that the said sewer was in every respect constructed as provided in the contract, and that the property in the district has received the full benefit for sanitary purposes ; and as a means of drainage.

It is further conceded that the tax-bills were regularly issued, and that the suit thereon is in the name of the proper party.

The testimony of the city engineers showed that seventy-five per cent. of the district sewers of the city empty into each other and that in every case the receiving sewer was much larger than the sewers emptying into it. It was further shown that a much smaller sewer

than the one in question would have been sufficient to have drained the district and that this sewer was constructed with the expectation of carrying the drainage and sewerage to be received from a large tributary territory. That it was the practice in all cases of this sort to make the receiving sewer much larger than those emptying into it and if constructed in any other way it would be worthless.

The passage and promulgation of said ordinance, providing for the establishment of said sewer district and the construction of the sewer therein, furnishes indubitable evidence that the common council of said city deemed said sewer necessary for sanitary and other purposes. That act of the common council was the exercise of a delegated legislative power in respect to the establishment of said sewer district and the construction of the sewer therein. This power seems to have been exercised in conformity to the requirements of the charter.

But it is objected that said sewer was ordained larger than was necessary to drain district number 46, and that in consequence thereof a needless expense was entailed upon the property-owners of the district in the construction thereof, and that in this the city exceeded the power conferred by its charter. We think this view of the power of the common council is too narrow.

The legislature by this charter has provided a system of sewerage commensurate with the wants and necessities of the population of a large and growing city. No doubt appreciating from a sanitary point of view the transcendent importance of the subject of municipal sewerage, it undertook to provide in the charter of the City of Kansas a system that would be ample to meet the wants and necessities of its people in the future as well as for the present.

To meet this view it was provided in said charter that a district sewer might be connected with a public

sewer, or another district sewer, or with the natural course of drainage ; and that it might have all the laterals, inlets and appurtenances w hich may be required to furnish drainage for not only one specific district, but for any number of districts which may be tributary to it by reason of lying within its flowage basin. The topographical character of any part of the city would determine, to some extent, the size, capacity, direction and length of the several district sewers therein. Such matters were wisely confided to the discretionary power of the common council of the city under the charter.

Seventy-five per cent. of the district sewers of the city empty into each other, and in every case the receiving sewer was built larger than those emptying into it. The sewer in question in this respect is not unlike seventy-five per cent. of the other district sewers of the city. The common council for many years has, it seems, construed the charter of the city to authorize this. This construction has been, until this controversy arose, generally accepted and acquiesced in as correct, and upon the faith of its correctness large sums of money have been invested in sewer contracts and sewer tax-bills—the last of which are assignable—and it would seem that, at this late day, a construction of the chartered powers of said city in this respect, so long and generally acquiesced in, ought not to be overthrown upon any questionable grounds.

If the sewer in question, though larger than is required for district number 46, was not of greater capacity than may be required in performing the office of receiving sewer for the other districts with which it may connect, then its construction is not in excess of the power conferred upon the city by its charter.

It is urged that under said ordinance 21757 the cost per linear foot of a district sewer, emptying into the natural course of drainage and connecting with other

district sewers, laterals and inlets, is greater than in tributary districts and greater than would be the costs of a sewer of the proper size, to answer the necessities of the district in which it is situate, and that the effect of said ordinance is unjust and oppressive for these reasons. We think this is within the authority granted to the city through its charter.     A court, cannot declare a statutory provision void because it is oppressive, and unjust unless it can be shown that such injustice is prohibited by the constitution.     *City of St. Louis v. Green*, 7 Mo. App. 468.     Cooley's Const. Lim. 164.

With the question of the unreasonableness or oppressiveness of a city ordinance passed in strict pursuance of an express grant of authority from the legislature, the courts have nothing to do.     *The City of St. Louis v. Henrichs*, 6 Mo. App. 591.

It is contended that the ordinance under consideration does not provide for the distribution of the burden of the costs of said district sewer in proportion to the benefits derived.     That other districts which are benefited by the construction of the sewer do not bear any portion of the cost thereof.

To this it may be answered that, in every form of taxation whether general or local, it is certainly desirable and proper that the burden should be distributed as near as may be in proportion to the benefit derived ; and that when there is an absence of constitutional prohibitory or restrictive provisions it is not in the power of the courts to enforce any fancied scheme of equality seeming to them more just than the one adopted by the legislature, the latter department of the government being wisely entrusted with the entire control of the subject.     "Practical equality of taxatiom may be regarded as one of those Utopian visions which neither philosopher nor legislator has ever yet realized."     "Such

is the infinite variety and complexity which human trans-
actions assume, that it surpasses the ingenuity of the
political economist and practical politician to foresee
exactly when, and how, the pressure of a proposed tax
will fall." *Egyptian Levee Co. v. Hardin*, 27 Mo. 495.

We have looked at contemporaneous charters of
some of the smaller cities of the state, and find in some
of these provision is made for opening and repairing
streets, maintaining a fire department and police at the
municipal expense. In such cities streets are generally
opened and maintained in the more populous districts.
Property-owners, whose property is situate on the out-
skirts or remotely from these populous districts, have
neither streets, nor fire or police protection, yet they pay
the same rate of taxation on their property as those of the
inhabitants, whose property is situate within such pop-
ulous localities and who enjoy the benefits of improved
streets, fire and police protection. This entails great
hardship and inequality, yet such chartered provisions
are not extraordinary or unusual.

If the question here were whether this sewer is
unreasonably large for the district having regard for its
location, and the further fact that it connects with the
natural course of drainage, and may connect with and
become the receiving sewer of the sewers of adjacent
and tributary districts, then there might be a question
at which we could look, but no such question is before
us. The city in the passage of said ordinance establish-
ing said sewer district, and in ordering the construction
of this sewer of such size, exercised both the police and
taxing powers of the state under the authority of the
charter granting the same and this is not subject to the
control of the courts. *McCormack v. Patchin*, 53 Mo.
33; *Keating v. City of Kansas*, 84 Mo. 415; *Ruggles et
al. v. Collins et al.* 43 Mo. 353 ; *Giboney v. Cape
Girardeau*, 58 Mo. 141.

It is laid down in some of the authorities that, whether a contemplated improvement within a municipal corporation partaking in nearly equal proportions of a benefit to the public and a special benefit to the property of a local district ought to be made a public charge, or be made at the expense of the property specially benefited, is a question for the governing power of the municipality.

When such state of facts exists it becomes a matter of discretion in the governing power of the municipality to determine whether the property benefited shall bear the expense, or whether the cost of the improvement shall be made a public charge ; and this discretion when exercised is not the subject of review by the courts. Welty on Law of Assessments (1 Ed.) secs. 308, 309 ; *Fagan v. Chicago*, 84 Ill. 231 ; *Brewster v. Davenport*, 31 Ia. 427 ; *Cook v. Slocum*, 27 Minn. 513.

It may be that the complaining property-owners in sewer district number 46, in respect to the property-owners in other districts lying on higher ground but within the same drainage basin, sustain the relation of servient to dominant proprietors and that there is a case *damnum absque injuria*. Upon principle this would seem to be so. After rather a careful examination of the whole case, we are compelled to think the ordinance, whose validity is questioned here, is within the meaning and scope of the power conferred upon the city by its charter. That it is within the scheme contemplated by the charter for the establishment of a sewer system for said city and should be upheld. It follows from these considerations that the circuit court erred in the giving of said instructions for defendant and refusing those asked by plaintiff already referred to. With the concurrence of Judge ELLISON, Judge GILL, not sitting, the judgment of the circuit court is reversed and the cause remanded.