HEMAN v. ALLEN et al., Appellants.

In Banc, June 4, 1900.

1. **Special Tax Bill**: COST OF CONSTRUCTION: PLEADING: CURED BY JUDGMENT: EVIDENCE. It is necessary for a petition in a suit founded on a special tax bill for the construction of a sewer in St. Louis to allege that the board of public improvements made an assessment of the entire cost of the construction against the property in the sewer district. But where the tax bill, put in evidence without objection, shows that the cost of construction was so assessed, and no objection was taken to the petition by demurrer, the defect was, under the statute, cured by the judgment adjudging such tax bill to be legal.

2. ———: OBJECTION TO ADMISSION IN EVIDENCE. An objection that a tax bill is "incompetent, irrelevant and immaterial evidence" is no objection to the admission in evidence of the bill itself.

3. ———: PUBLIC OR PRIVATE SEWERS: SANITARY PURPOSES. Where the charter of a city gives the municipal assembly authority to construct private sewers "whenever the board of public improvements shall recommend it as necessary for sanitary purposes," and the board so recommends and the assembly by ordinance directs its construction in accordance with such recommendation, it is not a public but a private sewer, however beneficial it may be to the public as a sanitary measure.

4. ———: ———: SEWER EIGHT FEET IN DIAMETER: COLLATERAL ATTACK. Under said charter a sewer eight feet in diameter is not a public sewer. And where under the charter the board of public improvements are the sole judges of the necessary dimensions of a sewer, their act in recommending its establishment as a private instead of a public sewer, is not open to attack in a suit on a special tax bill.

5. ———: ———: ADDING NEW TERRITORY. The adding of 25 acres of city territory not included within the lines of the original sewer district and the draining thereof into the main stem of the original sewer, does not convert the sewer from a private into a public sewer.

6. ———: ESTABLISHING SEWERS: INTERFERENCE OF COURTS. As a general rule, in the absence of fraud in establishing a sewer district, or in letting the contract for a sewer's construction, and in the absence of unreasonableness of the ordinances providing for the establishment and construction of the sewer, the courts will not interfere to stop the payment of a special tax bill issued against a private citizen in the sewer district as a benefit assessment.

7. ———: ———: ———: OPPRESSIVE. A city ordinance establishing a private or district sewer can not be declared void simply because it is oppressive. (Overruling Heman v. Handlan, 59 Mo. App. 490.)

8. ———: BENEFIT ASSESSMENTS: APPORTIONMENT: NOTICE: CONTEST: DUE PROCESS OF LAW. Municipal corporations have power to impose the whole or any part of the cost of constructing a sewer against adjoining property, provided the assessments for benefits be not in substantial excess of the benefits received. And this they can do without notice of a hearing to the owners of such property, or opportunity to contest the existence of the benefits. Where this power has been regularly exercised the propriety of the special tax is not subject to review by the courts. Nor is such assessment made in such way, in violation of the constitutional provision prohibiting the taking of property without due process of law.

9. ———: BENEFIT TAX: EXCESSIVE: CONSTITUTION. Where private property is benefited by public improvement the assessment against it by the proper municipal authorities for its proportionate share of the cost of the improvement, not exceeding the benefit which the property derives by reason of such improvement, is not the taking of private property without due process of law, but is simply an assessment for benefits.

10. ———: ———: NOTICE. No notice is required to be given to the owner of property of a sewer district of the passage of an ordinance establishing the district, nor of the assessment of a benefit against his property before the issuing of the tax bill, nor is such notice necessary to the validity of the special tax.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris*, Judge.

AFFIRMED.

*Grover & Grover* and *G. B. Webster* for appellants.

(1) Under sec. 22, art. 6, charter of St. Louis, before a lien can arise on property in a taxing district for the cost of

the construction of sewers, the board of public improvements must make an assessment of the entire cost of the construction against the property. The petitions in these cases do not allege that the board made the assessment, and the petitions allege that "the president of the board of. public improvements computed the cost thereof, and levied and assessed the same as a special tax, etc." This does not meet the requirement of the charter. The petition, therefore, does not state one of the facts necessary to constitute a lien. (2) There is no evidence to prove that the board ever made an assessment. (a) The petition must state all the facts necessary to constitute a cause of action, so there must be evidence to sustain all the facts necessary to constitute a cause of action. This proof is not dispensed with in a suit on a special tax-bill any more than it is dispensed with in any other kind of suit. (b) Sec. 25, art. 6, of the charter, does not dispense with proof of the necessary allegation of the petition; but only provides that the special tax bill shall be *prima facie* proof of the allegations necessary to constitute a cause of action, in a petition for the enforcement of the lien of a special tax bill. The special tax bill can not be *prima facie* evidence of a necessary fact, which has not been alleged in the petition. It is only *prima facie* evidence of necessary facts which are alleged in the petition. (c) The tax bill itself contains no evidence that an assessment had been made. The tax bill is not in itself an assessment. (3) It was error for the court to refuse to allow, as it did, the defendants to show by the record of the board of public improvements that the board never inquired into or adjudicated the question as to whether or not the public was benefited in any way by the construction of the Vandeventer avenue sewer. As the tax against the property-holder must be limited to the amount of benefit accruing to the property-holder's lots over and above the benefit which inured to the gen-

eral public from the same improvement, it was entirely rele-
vant for defendants to show that the public was benefited,
the extent of the benefit, and that the board never examined
into or made an adjudication on that subject. Norwood v.
Baker, 172 U. S. 269; Fay v. Springfield, 94 Fed. 409;
Hutcheson v. Storrie, 51 S. W. 848. (4) The main sewer
on Vandeventer avenue into which the lateral district sewers
emptied was a public sewer, and was not a district sewer.
Moreover, it was held to be a public sewer by the St. Louis
Court of Appeals, on substantially the same evidence which
is presented in this case. Heman v. Handlan, 59 Mo. App.
490. (a) It was originated, planned and constructed as a
public health measure. (b) The main artery of this sewer,
to-wit, the "main sewer" on Vandeventer avenue, was for
the use of the many "districts" which were embraced in the
taxing area, which embraced 525 acres of land. The main
stem was for the use, not of the district, but for the use of
many districts. The character of the sewer is to be deter-
mined by its uses. (c) The sewer was projected to drain
125 acres of public property composed of streets and alleys
lying in the taxing district. As to that public property, the
sewer was certainly a public sewer. (d) The ordinance cre-
ated, not a district sewer, but a sewer system, in which there
was a central public artery, surrounded by districts, from
which districts lateral or district sewers were conducted into
the main conduit. It is impossible to call this main conduit
a district sewer within the contemplation of the charter.

*Hickman P. Rodgers, David Goldsmith, Collins, Jami-
son & Chappell* for respondent.

(1) It is a well-recognized rule of pleading that plain-
tiff need only state in his petition what he is bound to prove
to make out his *prima facie* case. Crane v. Railroad, 87

Mo. 588-593.   The special tax bill made a *prima facie* case. St. Louis v. Oeters, 36 Mo. 456; Ess v. Bouton, 64 Mo. 105; St. Joseph v. Farrell, 106 Mo. 444.   Allegations of facts unnecessary to sustain plaintiff's case are merely surplusage. Hudson v. Railroad, 101 Mo. 29.   (2)   The tax bill bears on its face evidence that the assessment had been made by the board of public improvements.   (3)   It is immaterial whether the board of public improvements inquired into or adjudicated the question of benefit to the public arising from construction of the sewer, since it was a local improvement, the cost of which was properly taxable against the property within the district.   Lockwood v. St. Louis, 24 Mo. 22; Palmyra v. Morton, 25 Mo. 595.   (4)   The power to levy assessments for local improvements is referable to the taxing power.   It is discretionary for the legislature to impose the whole or any part of the cost of improvement on adjoining property.   Lockwood v. St. Louis, Ibid; Garrett v. St. Louis, 25 Mo. 510; St. Joseph v. Farrell, 106 Mo. 437; Moberly v. Hogan, 131 Mo. 23; Rolph v. Fargo, 7 N. Dak. 668.   (5) That provision of the Constitution of the State of Missouri, which requires all property subject to taxation to be taxed in proportion to its value, is applicable only to general taxation, not to local assessments where the money is expended on the property taxed.   The latter may be based on the area or front foot.   Egyptian Levee Co. v. Hardin, 27 Mo. 495; Farrar v. St. Louis, 80 Mo. 379; Johnson v. Duer, 115 Mo. 376.   (6)   An assessment for local improvement is not considered as a burden, but as an equivalent or compensation for the enhanced value which the property derives from the improvement.   Sheehan v. Good Samaritan, 50 Mo. 158; McCormack v. Patchen, 53 Mo. 36; Farrar v. St. Louis, 80 Mo. 391; Skinker v. Heman, 148 Mo. 349.   (7)   Appellants have no reason to complain of the finding of the trial court upon the fact that the sewer in question was a district sewer,

as distinguished from a public sewer. The board of public improvements of the city of St. Louis, having determined it to be a district sewer, its action in that respect, being the exercise of a discretion, is not reviewable by the courts. St. Louis v. Oeters, 36 Mo. 456; Johnson v. Duer, 115 Mo. 366; Moberly v. Hogan, 131 Mo. 19; Warren v. The Barber Pav. Co., 115 Mo. 580; Skinker v. Heman, Ibid.

BURGESS, J.—This is a suit upon a special tax bill issued by the president of the board of public improvements against the property of defendants for the sum of forty-nine dollars and four cents, for its proportionate part of the cost of constructing a district sewer in Vandeventer Avenue Sewer District No. One, in the city of St. Louis.

The answer sets up defenses which are equitable in their character, and then by way of cross bill asks for a decree cancelling and annulling the tax bill and lien.

The trial resulted in a judgment for plaintiff for the amount of his claim which was adjudged and decreed to be a first lien against the property described in the petition. After unsuccessful motions for a new trial, and in arrest, defendants appeal.

Objection is taken to the petition upon the ground that it does not state a cause of action, in that it does not allege that the board of public improvements made the assessment of the entire cost of the construction against the property in the sewer district, but alleges that the president of said board computed the cost thereof, and levied and assessed the same as a special tax. Under section 22, article 6, of the charter of the city of St. Louis, before a lien can attach to property in a taxing district for the cost of the construction of sewers, the board of public improvements must make an assessment of the entire cost of construction against the property liable for the cost of construction. The tax bill

which was put in evidence shows that the board of public improvements did assess the costs of the sewers of said district, and as no objection was taken to the petition by demurrer, the defect was cured by the judgment.    Section 2113, Revised Statutes 1889, provides that no judgment after trial shall be reversed, impaired or in any way affected for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a judgment, and it is clear that the court ought not to have given the judgment that it did give in the absence of proof of the assessment of the entire cost of the sewer, by said board.    So that this defect in the petition is now unavailable to defendant.

But defendants say that as the petition does not state a cause of action the court erred in admitting in evidence over their objection the special tax bill sued upon.    The record, however, fails to show that an objection was made to the introduction in evidence of this bill.    It is true it shows that, when plaintiff, who was a witness in his own behalf, was testifying, and was handed the tax bill by his attorney and asked as to the signatures of Flad and Campbelle, as president of the board of public improvements and comptroller, respectively, as shown by the tax bill, the defendant objected upon the ground that the evidence was "incompetent, irrelevant, and immaterial," but these objections did not go to the introduction in evidence of the tax bill itself, and can not now be so considered.

It is argued by defendant that the sewer for the construction of which in part the tax bill sued on was issued is a public sewer, and should be paid for out of the public funds and not by the assessment of property owners.    That the municipal authorities undertook by ordinance to establish Vandeventer Avenue Sewer District Number One, is not questioned, but the contention is that the facts and circum-

stances in evidence show that the sewer is a public sewer, and that, as the cost for the construction of such sewers can only be paid out of the revenues of the city, the tax bill is void.

Sections 21 and 22 of article 6, Scheme and Charter, define "public and private sewers."

Section 21 provides that "public sewers shall be established and constructed along the principal courses of drainage, at such times, to such extent, of such dimensions and material and under such regulations as may be provided by ordinance, to be approved by the board of public improvements, and there may be constructed such branches to sewers already constructed, or to be constructed, as may be considered expedient by said board."

Section 22 provides that "district sewers shall be established within the limits of districts, to be prescribed by ordinance as approved by the board of public improvements, and so as to connect with a public sewer, or some natural course of drainage. Such district may be subdivided, enlarged or changed, upon the recommendation of said board, by ordinance, at any time previous to the construction of the sewer therein. The assembly shall cause sewers to be constructed in any district whenever a majority of the propertyholders resident therein shall petition therefor, or whenever the board of public improvements shall recommend it as necessary for sanitary or other purposes; and the character, dimensions and material of such sewer shall be prescribed and may be changed, diminished, enlarged or extended, and such sewer shall possess all requisite laterals, inlets and other appurtenances."

These sections provide for the payment of the cost of public sewers by appropriation out of the public revenue, and the cost of district sewers by special tax bills against the property in the sewer district.

It will be observed that by these sections, almost unlimited power is invested in the municipal authorities in the location and building of public and district sewers, and, as to the latter, there is no restriction as to their size or cost.

Yet it is argued by defendants that because the construction of the sewer was a sanitary measure it was a public benefit, and therefore a public sewer; and that because the main stem of the sewer is eight feet wide, and connected with lateral sewers of varying length, the main stem is at all events a public sewer, and the lateral sewers district sewers.

As to the first proposition it is refuted by the article and section of the charter, which authorize the construction of district sewers whenever the board of improvements shall recommend it as necessary for sanitary purposes. It thus seems clear that at least one of the chief objects in the construction of the sewer in question, that is for sanitary purposes, was that for which the city was authorized to construct it.

With respect to the contention that because the main stem of the sewer is eight feet wide, it is a public sewer, it is only necessary to say that of its dimensions, the board of public improvements were under the charter of the city the sole judges, and their acts in this collateral way not subject to attack.

So, with respect to the assertion that part of the sewer in question is a public sewer because it is the main stem, and that the lateral sewers connecting with it are district sewers. This position seems to us to be alike illogical, for the reason, that the charter provides that all district sewers shall be constructed with all requisite "laterals, inlets and appurtenances," and the connection of lateral sewers with the district sewer could have no tendency towards converting the district sewer into a public sewer.

Nor does the fact that twenty-five acres of land which

were not included in the original lines of the sewer district have subsequently been drained into this sewer, affect the rights of the parties to this suit. Their drainage connections with the sewer in question have been made since the sewer district was established, the building of the sewer ordered by the board, the work done, and the tax bill sued upon issued for the work, and it is in no way affected thereby.

"The legislature, in the exercise of its power of taxation has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion; and when it determines what lands which might be benefited by the improvement are in fact benefited, its determination is conclusive upon the owners and the courts." [2 Beach on Public Corporations, sec. 1175, and authorities cited.]

And as a general rule in the absence of fraud in establishing a sewer district, or in letting the contract for the sewer's construction, and in the absence of unreasonableness of the ordinances providing for the establishing and constructing the sewer, courts will not interfere.

The case of Heman v. Handlan, 59 Mo. App. loc. cit. 491 relied upon by defendants, announces a different rule. That case was a suit upon a special tax bill issued against defendants' property for its proportionate share of the costs of building this same sewer. No instructions were asked or given upon the trial, which resulted in a judgment for the defendant therein. The court said: "When an action at law is tried without error, and no instructions are asked or given, the judgment of the trial court will be upheld on appeal, if it can be sustained on any possible theory of law applicable to the facts." The court held that as there was

evidence tending to show that the sewer was a public sewer, and the ordinance by which it was designated a district sewer was oppressive, the finding and judgment of the court would not be disturbed. This decision in holding that the ordinance under consideration may be declared void merely because it is oppressive, is, we think, in conflict with the great weight of authority, and supported by none.

The municipal authorities of the city of St. Louis have the same authority, under its charter, to establish sewer districts and to provide for the construction of sewers therein that they have to open, grade and otherwise improve its streets, and it was held by this court in the case of Skinker v. Heman, 148 Mo. loc. cit. 355, that, "The general rule in this State is that with the exercise of such power the courts will not interfere. But when it appears that an ordinance passed in pursuance of such power is the creature of fraud or is the product of legislative whim or caprice merely, and in violation of common right, imposing a burden ·upon the citizen without any corresponding benefit to him, or the community of which he is a constituent, the courts will interfere for his protection."

Morse v. Westport, 136 Mo. 276, was a suit to restrain the defendants, the city of Westport, its engineer and board of public improvements, from letting contracts under ordinance to macadamize certain blocks on McGee street. The proposed street improvements were to cost $5,274, making the special tax amount to more than $2.10 per front foot at any part of the improved street. The local municipal body had by ordinance ordered the improvements. The court held, that, even conceding the propriety or reasonableness of the exercise of the taxing power by the city open to review by the courts, the ordinance then under review was not an unreasonable exercise of municipal power.

In the case of Johnson v. Duer, 115 Mo. 376, it was

held, that where the authority of establishing sewer districts is vested by the legislature in the city council, the action of such council is not subject to collateral attack.

So, in the City of Kansas to use v. Richards, 34 Mo. App. 521, it is held that, "Whether a contemplated improvement within a municipal corporation partaking in nearly equal proportions of a benefit to the public, and a special benefit to the property of a local district, ought to be made a public charge, or be made at the expense of the property specially benefited, is a question for the discretion of the governing power of the municipality, and this discretion, when exercised, is not the subject of review by the courts." To the same effect is Moberly v. Hogan, 131 Mo. 19.

We, therefore, conclude that the municipal authorities of the city of St. Louis were vested with the exclusive power of establishing Vandeventer Sewer District No. One, as a district sewer, and that their acts in so doing in the absence of fraud, is conclusive upon the courts in this action.

It is also contended by defendant that section 22 of article 6, of the city charter, which provides among other things that "as soon as a district sewer, with its inlets, manholes and other appurtenances is fully completed, the said board [of public improvements] shall cause to be computed the whole cost thereof, and shall assess it as a special tax against all the lots of ground in the district respectively, without regard to improvements, and in proportion as their respective areas bear to the area of the whole district, exclusive of the public highway," and the ordinance authorizing the construction of the Vandeventer avenue sewer in pursuance thereof are violative of section 1 of the 14th amendment of the Federal Constitution, which provides that, "Nor shall any State deprive any person of life, liberty or property without due process of law," and also of the Constitution of this State, in that, by their terms a betterment tax is assessed against the

property of defendants without regard to the question of corresponding benefits, and without notice of a hearing, and opportunity to contest the existence of benefits to their property, or fairness of their apportionment between the several owners of the property assessed.

In Lockwood v. St. Louis, 24 Mo. loc. cit. 22, it was said: "These special assessments are found in the English law, and have prevailed, it is believed, in most, if not all, of our American States, and their validity, when assessed as in this instance, can not be questioned under our Constitution. . . . . Their intrinsic justice strikes every one.    If an improvement is to be made, the benefit of which is local, it is but just that the property benefited should bear the burden.    While the few ought not to be taxed for the benefit of the whole, the whole ought to be taxed for the few."    The power to levy assessments for local improvements belongs to the legislature, which is the taxing power, and that power may be delegated by that branch of the government to municipal corporations, which may in their discretion impose the whole or any part of the cost of such improvement against adjoining property, provided always that the assessments for benefits be not in substantial excess of the benefit received.    [Garrett v. St. Louis, 25 Mo. 505; St. Joseph to use v. Farrell, 106 Mo. 437; Moberly v. Hogan, *supra.*]

Rutherford v. Hamilton, 97 Mo. 543, was a suit upon a special tax bill issued by the city engineer of the City of St. Joseph in payment for a lateral sewer constructed for the purpose of drainage of adjacent property of which the defendant owned a part.    The defense interposed was that the act under which the sewer was constructed was unconstitutional, "because the cost of the sewer was apportioned by the city engineer against the property fronting on the improvement in proportion to the frontage of each lot, without considering the amount of actual benefits conferred by the sewer

on each lot owner." And it was held that the constitutionality of such an act was no longer an open question in this State, and that such an assessment was conclusive on the property owner as to the amount of benefit which his property derived from the improvement.

So in Keith v. Bingham, 100 Mo. 300, it was ruled that, the fact that the street did not benefit but damaged the property sought to be charged with the tax bill, was no defense to an action on the latter. The same doctrine is announced in Nevada to use v. Eddy, 123 Mo. 546.

It is upon the principle that property assessed for local improvements derives an equal or greater benefit from the improvements than the amount assessed against it of which the board of public improvements are the judges, that special tax bills for street improvements are sustainable under the taxing power, and where that power has been regularly exercised, the propriety of the special tax is not subject of review by the courts.

Where private property is benefited by public improvement the assessment against it by the proper authorities for its proportionate share of the cost of the improvement, not exceeding the benefit which the property derives by reason of such improvement, does not in any way increase the burdens of the owner as a taxpayer, and is not the taking of private property without due process of law, but is simply an assessment for benefits. The benefits to the property by reason of the improvements compensate for the assessment.

We are, however, referred to a number of decisions of Federal and State courts which it is asserted announce a different rule, among which Norwood v. Baker, 172 U. S. 269, is the leading one. That case arose out of the condemnation of certain lands for the purpose of opening a street in the village of Norwood, a municipal corporation in Ohio.

Ellen R. Baker owned a tract of land in said village,

through which the village authorities desired to open a street called Ivanhoe avenue, and for that purpose condemned a strip fifty feet wide through her land. They then by ordinance assessed upon her land abutting on each side of said street an amount covering not simply a sum equal to that paid for the land taken for the street, but in addition the costs and expenses connected with the condemnation proceedings, and the validity of this ordinance was assailed upon the ground that it was in violation of the Fourteenth Amendment of the Constitution of the United States.

The Constitution of Ohio provides that where private property shall be taken for public use, "compensation therefor shall first be made in money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." Cities and villages in Ohio are by statute given power to lay off, establish, open, widen and extend public streets and to condemn land for that purpose. This statute also provides that where land is appropriated for opening or extending a street the council may assess the cost and expenses of such appropriation or acquisition, and of the improvement, or of either, upon the general tax list, and in all such cases, and also in all cases where an improvement of any kind shall be ordered and is made to an existing street, the expense thereof, when not assessed as a general tax to be paid by the municipality generally, "shall be assessed by the council on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the front foot of the property bounding and abutting upon the improvement, as the council, by ordinance setting forth specifically the lots and lands to be assessed, may determine before the improvement is made."

In the condemnation proceeding Mrs. Baker was allowed

$2,000 for the strip of land taken, irrespective of any benefit to her of the improvement. The village then assessed on her land which abutted on the strip taken the $2,000 paid to her, and all the cost attending the condemnation proceedings, which amounted to $218.58.

The court held that the assessment, being by the front foot of the property bounded and abutting upon the improvement, "was under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the excess of the cost of opening the street in question over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation."

That case has since been followed in Fay v. Springfield, 94 Fed. Rep. 409, Charles v. Marion, 98 Fed. Rep. 166, Lyon v. Tonawanda, 98 Fed. Rep. 361, Loeb v. Trustees, 91 Fed. Rep. 37, Cowley v. Spokane, 99 Fed. Rep. 840, Sears v. Street Comm'rs, 53 N. E. Rep. (Mass.) 876, and Hutcheson v. Storie, 92 Tex. 685.

But the facts upon which the case was decided, are so unlike the facts in the case at bar, that we do not think it controlling authority in this. In that case there was assessed upon Mrs. Baker's land which abutted "on each side of the new street an amount covering, not simply a sum equal to that paid for the land taken for the street, but, in addition, the costs and expenses connected with the condemnation proceedings," the result of which was that the village of Norwood got her fifty foot strip of land for nothing, and charged her $218.58 for the privilege of taking it. While in the case at bar, defendant's benefits were $49.04 more than the damage to his property. Morever, the decision was by a divided court.

Besides, if it is to be interpreted as holding that the front foot or area rule is violative of the Fourteenth Amend-

ment to the Federal Constitution which prohibits any State from depriving any person of his property without due process of law, it is in conflict with the prior ruling of that court· in Spencer v. Merchant, 125 U. S. loc. cit. 355, in which it is said :

"The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion. [Willard v. Presbury, 14 Wall. 676; Davidson v. New Orleans, 96 U. S. 97; Mobile County v. Kimball, 102 U. S. 691, ·703, 704; Hagar v. Reclamation District, 11 U. S. 701.] . . . . In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the legislature of the State, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either, like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax, and the class of lands which will receive the benefit and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners. When the determination of the lands to be benefited is entrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited and how much. But the legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the

owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited."

In Williams v. Eggleston, 170 U. S. loc. cit. 311, it was said: "Neither can it be doubted that, if the State Constitution does not prohibit [and our Constitution does not] the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement." See, also, Parsons v. District of Columbia, 170 U. S. 45; 2 Dillon's Mun. Corps. (4 Ed.), sec. 752.

The rulings of that court upon the question now under consideration have been uniform, and in line with a rule well established by the Supreme Court of the United States, and never departed from until the Norwood case. We must, therefore, decline to recede from a doctrine so well established, and which we think supported by reason and authority.

No notice was required to be given to defendant of the passage of the ordinance, or the assessment before the issuing of the tax bill, and none was necessary.

The judgment should be affirmed, and it is so ordered. All concur.