# PARSONS *v.* DISTRICT OF COLUMBIA.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 177. Submitted December 20, 1897. — Decided April 11, 1898.

Although the matter in dispute in this case is not sufficient to give this court jurisdiction, it plainly appears that the validity of statutes of the United States, and of an authority exercised under the United States was drawn into question in the court below, and is presented for the consideration of this court.

The enactment by Congress that assessments levied for laying water mains in the District of Columbia should be at the rate of $1.25 per linear front foot against all lots or land abutting upon the street, road or alley in which a water main shall be laid, is conclusive alike of the necessity of the work and of its benefit as against abutting property.

The power of Congress to exercise exclusive jurisdiction in all cases within the District includes the power of taxation.

If the assessment for laying such water mains exceeds the cost of the work it is not thereby invalidated.

ON October 5, 1895, Hosmer B. Parsons, the plaintiff in error, filed in the Supreme Court of the District of Columbia

his petition against the District of Columbia and John W. Ross, Charles F. Powell and George Truesdell, Commissioners of the District, complaining, as illegal, of a certain charge or special assessment against land belonging to the petitioner, as a water-main tax, or assessment for laying a water main in the street on which said land abuts. The petition avers that the charge or assessment in question was made in accordance with the act of the legislative assembly of the District of Columbia approved June 23, 1873, c. 5, and the acts of Congress approved respectively June 10, 1879, c. 16, 21 Stat. 9; June 17, 1890, c. 428, 26 Stat. 159; and August 11, 1894, c. 253, 28 Stat. 275. The petition alleged the following grounds of objection to the assessment:

1. That the petitioner was not one of the property holders who requested that the work and improvements for which said parcel of land was assessed should be done and made, and that said charge was made against property whose owner had not requested the doing of said work or the making of said improvements.

2. That the petitioner was not consulted as to advisability of making said improvements, and was given no opportunity to be heard upon the questions of cost or utility or benefit of the work, or of the apportionment of the tax, and was not notified of the amount charged until after the work was concluded, and after the assessment had been made and had gone into effect as a lien upon said land, which was not a reasonable time.

3. Said assessment was not made and was not authenticated by any officer or person authorized to make or authenticate the same.

4. The assessment was made without any estimate of the cost of the work to be done, and without regard to the cost of the work or the value of the improvement, and not upon the basis of benefits to the property assessed, and said assessment is in excess of the cost of the work.

5. The assessment was made without authority of law, and the respondents had no jurisdiction or right to make the same.

6. The description of the parcel of land assessed is insufficient.

7. The said tax was not assessed within thirty days after the said water main had been laid and erected.

8. All of the said land assessed does not abut upon the street in which said water main was laid.

The petition proceeded to allege that the said charge remained unpaid, and that the Commissioners were threatening to sell and convey said land in order to pay and satisfy said illegal charge, whereby the petitioner's title to his land was clouded, and that he was thereby injured and has no appeal.

The petitioner prayed that a writ of certiorari should issue, commanding the respondents to certify to the court a copy of each and every record and part of record relating in any manner to the laying of said water main and said assessment, and that, upon the coming in of the return of the respondent, the said charge complained of should be quashed and annulled, etc.

The writ of certiorari was issued and a return made thereto. The principal facts appearing therein are that the petitioner's land was assessed with the sum of $872.50, being at the rate of $1.25 for each linear foot abutting on the street; that the land abutting on the opposite side of the street was charged with an equal sum, making a total assessment of $2.50 per foot; and that the cost of the main was $1.50 per foot.

On January 6, 1896, after a hearing upon the petition and return, the petition was dismissed. An appeal was thereupon taken to the Court of Appeals of the District of Columbia, where, after argument, the judgment of the Supreme Court of the District was, on April 16, 1896, affirmed; and on May 5, 1896, the cause was by a writ of error brought to this court.

The principal enactments of Congress pertaining to the water system of the District of Columbia are found in the Revised Statutes relating to the District in chapter 8, sections 195 to 221.

Thereby the legislative assembly, then in existence, was

authorized to supply the inhabitants of Washington and Georgetown with Potomac water from the aqueduct, mains or pipes laid in the streets and avenues by the United States, and to make all laws and regulations for the proper distribution of the same ; to establish a scale of annual rates for the supply and use of the water, and generally to enact such laws as might be necessary to supply the inhabitants of Washington and Georgetown with pure and wholesome water, and to carry into full effect the provisions of said chapter 8 of the Revised Statutes. It is further provided that a water tax may be levied and collected on all real property within the limits of the city of Washington, which binds or touches on any avenue, street or alley in which a main water pipe may be laid by the United States or by the District; that the water tax may be levied on lots in proportion to their frontage or their area, as may be determined by law, and may be collected in not less than three nor more than five annual assessments; and that the water tax so authorized to be levied and collected shall constitute a fund to be used exclusively to defray the cost of distribution of the water, including all necessary fixtures and machines connected with such distribution.

In pursuance of the authority thus delegated, the legislative assembly, by act approved June 23, 1873, provided as follows :

" That hereafter in order to defray the expenses of laying water mains and the erection of fire plugs, there be, and is hereby, levied a special tax of one and a quarter cents per square foot on every lot or part of lot which binds in or touches on any avenue, street or alley in which a main water pipe may hereafter be laid and fire plugs erected, which tax shall be assessed by the water registrar within thirty days after such water mains and fire plugs shall have been laid and erected ; of which assessments the water registrar shall immediately notify the owner or agent of the property chargeable therewith, setting forth in said notice the number of the square in which is situated the property on which said tax is assessed, and the street, avenue or alley on which it fronts ; and the said tax shall be due and payable in four

equal instalments, the first of which shall be payable within thirty days from the date of the notice," etc.

By the act of March 3, 1863, § 204, Rev. Stat. D. C., it was provided that, "on petition of the owners of the majority of real estate on any square or line of squares in the city of Washington, water pipes may be laid and fire plugs and hydrants erected whenever the same may be requisite and necessary for public convenience, security from fire or for health." But this provision was replaced by the act of June 17, 1890, c. 428, 26 Stat. 159, which enacted that "the Commissioners shall have the power to lay water mains and water pipes and erect fire plugs and hydrants whenever the same shall be, in their judgment, necessary for the public safety, comfort or health."

By the act of August 11, 1894, c. 253, 28 Stat. 275, it was provided "that hereafter assessments levied for laying water mains in the District of Columbia shall be at the rate of one dollar and twenty-five cents per linear front foot against all lots or land abutting upon the street, road or alley in which a water main shall be laid." The defendants in error moved to dismiss the writ of error.

*Mr. Arthur A. Birney* for plaintiff in error.

*Mr. S. T. Thomas* and *Mr. A. B. Duvall* for defendants in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The defendants in error have moved to dismiss the writ of error, because the sum or value of the matter in dispute is less than five thousand dollars, and because the judgment of the court below does not involve the validity of a statute of the United States or of an authority exercised under the United States.

It is true that the amount or value of the matter in dispute is not sufficient to enable this court to exercise its revisory power

over the judgment of the Court of Appeals, but we think it plainly appears that the validity of statutes of the United States and of an authority exercised under the United States was drawn into question in the court below, and is presented, by the assignment of error, for the consideration of this court.

It is stated in the opinion of the Court of Appeals that the questions raised in that court were three: 1st, whether the act of the legislative assembly of the District of Columbia, approved June 23, 1873, in reference to the construction of water mains, and providing the mode of assessment therefor, and also the act of Congress of August 11, 1894, "to regulate water main assessments in the District of Columbia," are constitutional and valid enactments; 2d, whether in the assessment there was a sufficient description of the appellant's property; 3d, whether there was sufficient notice of the assessment given to the appellant. Those questions are clearly within the terms of the statute authorizing this court to review the final judgments or decrees of the Court of Appeals.

The proposition chiefly urged on our consideration is that, in all cases where proceedings are to be had for the taking of property, or to impose a burden upon it, the statute itself must provide for notice to the property owner; otherwise it is unconstitutional; and that the statutes under which the present proceeding was had did not provide for notice to the owner of land to be assessed, nor give him an opportunity to be heard.

Before we reach a particular examination of the reasoning advanced and of the authorities cited on behalf of the plaintiff in error, certain principles, so well settled by the authorities, Federal and state, and by views expressed by esteemed authors, as to form safe materials from which to reason, may well be briefly adverted to.

In every modern civilized community or state there are some matters of which every citizen and property owner must be indisputably visited with notice. In the eye of the law, he knows that his personal service is due to maintain public order and to protect his country from hostile invasion. He is bound to know that, in view of the protection he and his

property receive, it is his duty to contribute his due share to the establishment and maintenance of stable government. No person, in any country governed by laws, least of all in a country where the laws are passed and administered by legally constituted authorities, can be heard to say that he was ignorant of the fact that such was his duty, and that, if he neglected or failed to make such due contribution, lawful compulsory methods might be resorted to.

So, too, when he elects to become a member of a munic.pal community, and seeks to enjoy the social benefits thereby afforded, he is supposed to have notice of the necessary obligations he thus incurs. Streets must be graded, paved and lighted. A police force to enforce peace and order must be provided. Particularly, in the line of our present investigation, there is the obvious necessity for a system, to supply the inhabitants with a constant and unfailing supply of water, an essential for health, comfort and safety, next in importance to air. He cannot be heard to contend that he is entitled to gratuitously receive such advantages, nor that the laws and ordinances under which they are created and regulated are invalid, unless his individual and personal views have been formally obtained and considered.

On the other hand, it is equally well settled that the exercise of the power to assess and collect the public burdens should not be purely arbitrary and unregulated.

In each case, therefore, where the party, whose property is subjected to the charge of a public burden, challenges the validity of the law under which it was imposed, it becomes the duty of the courts to closely consider the special nature of the tax and legislation complained of.

It is trite to say that general principles announced by courts, which are perfectly sound expressions of the law under the facts of a particular case, may be wholly inapplicable in another and different case; and there is scarcely any department of the law in which it is easier to collect one body of decisions and contrast them with another in apparent conflict, than that which deals with the taxing and police powers.

There is a wide difference between a tax or assessment pre-

scribed by a legislative body, having full authority over the subject, and one imposed by a municipal corporation, acting under a limited and delegated authority. And the difference is still wider between a legislative act making an assessment, and the action of mere functionaries, whose authority is derived from municipal ordinances.

The legislation in question in the present case is that of the Congress of the United States, and must be considered in the light of the conclusion, so often announced by this court, that the United States possess complete jurisdiction, both of a political and municipal nature, over the District of Columbia. *Mattingly* v. *District of Columbia,* 97 U. S. 687; *Gibbons* v. *District of Columbia,* 116 U. S. 404; *Shoemaker* v. *United States,* 147 U. S. 282; *Bauman* v. *Ross,* 167 U. S. 548.

By this legislation a comprehensive system, regulating the supply of water and the erection and maintenance of reservoirs and of water mains, was established, and of this legislation every property owner in the District must be presumed to have notice. And accordingly when by the act of August 11, 1894, Congress enacted that thereafter assessments levied for laying water mains in the District of Columbia should be at the rate of one dollar and twenty-five cents per linear front foot against all lots or land abutting upon the street, road or alley in which a water main shall be laid, such act must be deemed conclusive alike of the question of the necessity of the work, and of the benefits as against abutting property. To open such questions for review by the courts, on the petition of any or every property holder, would create endless confusion. Where the legislature has submitted these questions for inquiry to a commission, or to official persons to be appointed under municipal ordinances or regulations, the inquiry becomes in its nature judicial in such a sense that the property owner is entitled to a hearing, or to notice or an opportunity to be heard.

This distinction was clearly brought out in the noted case of *Stuart* v. *Palmer,* 74 N. Y. 183. There an act of the State of New York empowered a commission composed of three persons to open and pave an avenue, and for that purpose

" to take such land as was requisite, estimate the value thereof and assess the amount on the lands benefited by the opening of the avenue in proportion to the benefits," but which provided for no notice to the property owner; and the Court of Appeals held that notice of the proceeding was essential, and that, accordingly, the proceedings were invalid. Subsequently the legislature passed a validating act, directing a sum equal to so much of the first assessment as had not been paid, with interest, and a proportionate part of the expenses of that assessment, should be assessed upon and apportioned among the lots upon which the former assessment had not been paid. The Court of Appeals sustained the act. 100 N. Y. 585. In delivering the opinion of that court, Judge Finch said:

"The act of 1881 determines absolutely and conclusively the amount of the tax to be raised, and the property to be assessed and upon which it is to be apportioned. Each of these things was within the power of the legislature, whose action cannot be reviewed in the courts upon the ground that it acted unjustly or without appropriate and adequate reason. . . . The legislature may commit the ascertainment of the sum to be raised and of the benefited district to commissioners, but it is not bound to do so, and may settle both questions for itself; and when it does so, its action is necessarily conclusive and beyond review. Here an improvement has been ordered and made, the expense of which might justly have been imposed upon adjacent property benefited by the change. By the act of 1881, the legislature imposes the unpaid portion of the cost and expense, with the interest thereon, upon that portion of the property benefited which has thus far borne none of the burden. In so doing, it necessarily determines two things, viz., the amount to be realized, and the property specially benefited by the expenditure of that amount. The lands might have been benefited by the improvement, and so the legislative determination that they were, and to what amount or proportion of the cost, even if it may have been mistakenly unjust, is not open to our review. The question of special benefit and the property to which it extends is of necessity a question of fact, and

when the legislature determines it in a case within its general power, its decision must of course be final. . . . The precise wrong of which complaint is made appears to be that the land owners now assessed never had opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation, the legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety being confided to its jurisdiction. It may err, but the courts cannot review its discretion. In this case, it kept within its power when it fixed, first, the amount to be raised to discharge the improvement debt incurred by its direction; and, second, when it designated the lots and property, which in its judgment, by reason of special benefits, should bear the burden; and having the power, we cannot criticise the reasons or manner of its action."

The case was brought to this court, and, under the style of *Spencer* v. *Merchant*, is reported in 125 U. S. 345. The reasoning of the Court of Appeals was quoted and approved, and its judgment, sustaining the constitutionality of the act in question, was affirmed.

In *Hagar* v. *Reclamation District*, 111 U. S. 701, the distinction between a tax or assessment imposed by a direct exercise of the legislative power, calling for no inquiry into the weight of evidence, nor for anything in the nature of judicial examination, and a tax or assessment imposed upon property according to its value to be ascertained by assessors upon evidence, was pointed out, and it was held that in the former case no notice to the owner is required, but that in the latter case the officers, in estimating the value, act judicially, and notice and an opportunity to be heard are necessary. In giving the opinion of the court it was said by Mr. Justice Field (p. 709): "Of the different kinds of taxes which the

State may impose, there is a vast number of which, from their nature no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes, . . . and generally specific taxes on things, or persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is, therefore, invaded."

Similar views have prevailed in most of the state courts, but, instead of citing the cases, we shall content ourselves with referring to the conclusions reached by two text writers of high authority.

In Cooley on Taxation, 447, the following conclusions, from many cases, are stated :

"1. The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefited.

"2. The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.

"3. The whole cost in other cases is levied on lands in the immediate vicinity of the work.

"In a constitutional point of view, either of these methods is admissible, and one may be sometimes just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions, may be decided erroneously ; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule."

In Dillon's Municipal Corporations, vol. 2, § 752, 4th ed., the conclusions reached are thus expressed :

" The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. . . . Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is according to the present weight of authority considered to be a question of legislative expediency."

It is well settled, by repeated decisions of this court, that the power of Congress to exercise exclusive jurisdiction in all cases whatever within the District includes the power of taxation. *Loughborough* v. *Blake*, 5 Wheat. 317; *Willard* v. *Presbury*, 14 Wall. 676; *Shoemaker* v. *United States*, 147 U. S. 282; *Bauman* v. *Ross*, 167 U. S. 548; *Wilson* v. *Lambert*, 168 U. S. 611.

Our conclusion is that it was competent for Congress to create a general system to store water and furnish it to the inhabitants of the District, and to prescribe the amount of the assessment and the method of its collection; and that the plaintiff in error cannot be heard to complain that he was not notified of the creation of such a system or consulted as to the probable cost thereof. He is presumed to have notice of these general laws regulating such matters.

The power conferred upon the Commissioners was not to make assessments upon abutting properties, nor to give notice to the property owners of such assessments, but to determine the question of the propriety and necessity of laying water mains and water pipes, and of erecting fire plugs and hydrants, and their *bona fide* exercise of such a power cannot be reviewed by the courts.

Another complaint urged is that the assessment exceeded the actual cost of the work, and this is supposed to be shown by the fact that the expense of putting down this particular main was less than the amount raised by the assessment.

But this objection overlooks the fact that the laying of this main was part of the water system, and that the assessment prescribed was not merely to put down the pipes, but to raise a fund to keep the system in efficient repair. The moneys raised beyond the expense of laying the pipe are not paid into the general treasury of the District, but are set aside to maintain and repair the system; and there is no such disproportion between the amount assessed and the actual cost as to show any abuse of legislative power.

A similar objection was disposed of by the Supreme Judicial Court of Massachusetts in the case of *Leominster* v. *Conant*, 139 Mass. 384. In that case the validity of an assessment for a sewer was denied because the amount of the assessment exceeded the cost of the sewer; but the court held that the legislation in question had created a sewer system, and that it was lawful to make assessments by a uniform rate which had been determined upon for the sewerage territory.

In *Hyde Park* v. *Spencer*, 118 Illinois, 446, and other cases, the Supreme Court of Illinois held that a statutory assessment to defray the cost, maintenance and keeping in repair of a drainage system was valid.

The other contentions made on behalf of the plaintiff in error are covered by the observations already made.

The judgment of the Court of Appeals is accordingly

*Affirmed.*