STATE v. ROBERT P. LEWIS COMPANY.[1]

February 7, 1901.

Nos. 12,373—(29).

#### City of St. Paul—Water-Frontage Tax.

Sp. Laws 1885, c. 110, §§ 26, 27, provide:

In addition to all other powers conferred upon said board, they are authorized to and shall assess upon each and every lot in the city of St. Paul, in front of which water pipes are laid, an annual tax or assessment of ten cents per lineal foot of the frontage of such lot or lots, and which shall be a lien upon such lot or lots, and shall be collected as hereinafter provided; * * * whereupon it shall be the duty of the county auditor to extend the same on his rolls against the property in said statement as aforesaid, for collection, and, if not paid within the time prescribed by law, then the same shall become a lien on said real estate, and said real estate shall be subject to all the penalties and charges as property delinquent for taxes for county and state purposes. All moneys collected or paid into the treasury of Ramsey county on account of said assessment or tax shall be paid over, from time to time, to the city of St. Paul for the use of said board of water commissioners. *Held*, this statute is invalid, under the fourteenth amendment to the federal constitution, being a taking of private property under the guise of taxation without just compensation, and without due process of law.

[1] Reported in 85 N. W. 207, 86 N. W. 611.

In proceedings in the district court for Ramsey county to enforce delinquent taxes on real estate, Robert P. Lewis Company interposed an answer and defense so far as judgment was demanded for a water-frontage tax amounting to $286. The case was tried before Jaggard, J., who found in favor of plaintiff, and certified to the supreme court for its determination the points stated in the opinion. Reversed on reargument.

*Horace E. Bigelow*, County Attorney, *James E. Markham* and *Franklin H. Griggs*, for plaintiff.

*Daniel W. Doty*, for defendant.

LEWIS, J.

In the matter of the proceedings to enforce the delinquent taxes upon real estate within the county of Ramsey for the year 1898, the trial court certified to this court for decision the following questions:

1. Are sections 26 and 27, chapter 110, Sp. Laws 1885, providing for the assessment for water pipes in the city of St. Paul, and the assessment made thereunder·against the defendant's land in this action, in violation of the constitution of the United States?

2. Is said law and said assessment void, under section 27, art. 4, of the constitution of Minnesota?

3. And, if said law is valid, then did the district court err in computing the frontage of the defendant's land?

Section 26 reads as follows:

"In addition to all other powers conferred upon said board, they are authorized to and shall assess upon each and every lot in the city of St. Paul in front of which water pipes are laid an annual tax or assessment of ten (10) cents per lineal foot of the frontage of such lot or lots, and which shall be a lien on such lot or lots, and shall be collected as hereinafter provided."

Section 27 provides that the tax be collected and enforced in connection with and under the same general provisions applicable to the collection and enforcement of general taxes. These sections were presumably enacted with reference to certain provisions in section 1, art. 9, of the state constitution, which authorizes such a front-foot tax, without regard to benefits or valuation, in cities with a population of five thousand or more.

It appears from the record that the "lot" in question consisted of sixty-five acres of unplatted land located in a suburban part of the city of St. Paul. The land was in a thinly-settled part; was used for pasturage purposes; was bounded on the west by a public highway called Dale street, for a distance of twenty-three hundred forty feet, and on the south by Front street, for a distance of six hundred thirty feet. A water conduit from the waterworks into the city was laid on Dale street in front of this property, and a water pipe on Front street. The tax levied by the board of water commissioners according to this frontage was sustained by the trial court. In a former appeal by this appellant in proceedings with reference to a similar tax for a previous year upon the same land, it was held that the provisions of the city charter referred to were not in conflict with the state constitution as to equality of taxation, and that the method adopted by the commissioners for computing the frontage was a proper one. State v. Robert P. Lewis Co., 72 Minn. 87, 75 N. W. 108. We are therefore not required to review that question here. And as to the second point certified, in view of the conclusion we have reached on the first question, it will not be considered, and we will confine our attention to the first proposition, which was not discussed nor involved in the former cases.

So far as we are aware, the bearing of the federal constitution upon the legislative power with respect to assessments for local improvements has never been presented to this court for consideration. Prior to the appearance of the case of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, perhaps the trend of the decisions in this country was in support of the theory that the legislative power in respect to special assessments was practically unlimited, and since that case was decided the state courts have not been agreed as to its scope and meaning. Probably no decision emanating from the supreme federal court for many years has been so sweeping, and at the same time so imperfectly understood and applied. We shall not attempt here a review of the facts upon which the decision was based. To be thoroughly comprehended, it must be carefully read, and all its bearings considered in the light of the authorities cited in its support. We shall content

ourselves with stating, as we understand them, the final proposi-
tions of law as there declared and adopted, and then consider
whether they are applicable and controlling in the case before us.
They are as follows:

First. Upon the ground that abutting property may be specially
and peculiarly benefited, special assessments may be levied upon
such property to meet the cost of building highways, sewers, and
like public improvements of a local nature. The principle which
justifies such assessments is that the property is specially and
peculiarly benefited, and that the owner receives in that form the
value of what he gives in the form of the assessment.

Second. Under the fourteenth amendment of the federal consti-
tution, "the exaction from private property of the cost of a public
improvement in substantial excess of the special benefits accruing
to him is, to the extent of such excess, a taking, under the guise
of taxation, of private property for public use without compensa-
tion."

Third. Where the principle of assessment adopted by the legis-
lature is arbitrary and without reference to benefits, and without
reference to a just and equal proportion and distribution of the
burden, no provision having been made for a hearing or review,
the act is illegal and void, and it is unnecessary for the owner to
tender the amount of the conceded benefits as a condition for ob-
taining relief.

It is fundamental that, in the absence of constitutional limita-
tions, the exercise of the taxing power rests exclusively in the
legislative discretion. The first and second propositions above
stated are not new principles of law, and are not declared as such
in Norwood v. Baker. The cases cited and reviewed show that
the court was careful to lay the foundation for its conclusion that
the legislative power in respect to local assessments is not abso-
lute, but is confined within certain limits. That it was the inten-
tion of the court to lay down a rule of law broad enough to em-
brace the logic and reasoning of the discussion seems to us indis-
putable. It cannot be that the court's conclusions were intended
to be limited to a technical construction of the Ohio statute, as
intimated in Webster v. City, 9 N. D. 208, 82 N. W. 732, and Cass

Farm v. City, 124 Mich. 433, 83 N. W. 108, and in Heman v. Allen, 156 Mo. 534, 57 S. W. 559. The principle involved was not necessarily confined to "street-opening" cases. The same principle was recognized by the court as applicable to all classes of local public improvements, whether in the opening, grading, and paving of a street, or in the construction of a sewer or the laying of a water main. This appears from the scope of the investigation and the nature of the cases reviewed. That the court intended to give voice to a general principle, and not to a narrow construction, is further evident from the language with which the opinion closes:

"The judgment of the circuit court must be affirmed, upon the ground that the assessment against the plaintiff's abutting property was under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the excess of the cost of opening the street in question over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation; and it is so ordered."

That the decision rested upon the doctrine that there was a limit to the legislative power, as defined in the third proposition above stated, appears from the fact that the dissenting opinion is based upon a denial of the soundness of such conclusion. That such was the scope and effect of the decision has been declared in the following cases: Loeb v. Trustees of Columbia Tp. (C. C.) 91 Fed. 37; Fay v. City of Springfield (C. C.) 94 Fed. 409, a street-paving case, where this language is found:

"Equality is equity. And the right of the owner of a lot to have this burden of special tax ratably distributed among the lots benefited does not depend alone upon the state constitution exacting equal taxation, but has 'its foundation in those elementary principles of equity and justice which lie at the root of the social compact' (In re Canal St., 11 Wend. 154–156); and he can, therefore, invoke for its security and protection the federal constitution, which inhibits not only the taking of private property for public use without just compensation, but the deprivation thereof without due process of law, and denies to the state the power to deny within its jurisdiction the equal protection of the laws."

See also Charles v. City of Marion (C. C.) 98 Fed. 166, 100 Fed.

538; Lyon v. Town of Tonawanda (C. C.) 98 Fed. 361,—both street-improvement cases.

Some of the state courts have been impressed with the decision under consideration, and have applied its doctrine. Sears v. Street, 173 Mass. 350, 53 N. E. 876. In Hutcheson v. Storrie, 92 Tex. Sup. 685, 51 S. W. 848, it was held distinctly, on the authority of Norwood v. Baker, that a statute was void which conferred on municipal authorities power to assess property for a local improvement without giving the property owner an opportunity to be heard on the question of benefits; and it was further held that the property owner might contest the validity of such invalid assessment, without regard to the actual amount of the benefits.

Before passing to a consideration of the particular statute involved in this appeal, it will be well to refer to the expressions of this court upon the subject of such special assessments.

In the early case of Rogers v. City of St. Paul, 22 Minn. 494, the then charter of St. Paul was attacked on the ground that it was in violation of the state constitution as to equality of taxation, because it did not protect the owner from an assessment in excess of the benefits conferred by the improvement. The opinion by Justice BERRY states that the principle of local assessments is that the special benefits which will accrue to a property owner from a proposed local improvement will be, at least, equal to the tax assessed upon his property on account of such improvement. The charter was sustained upon the ground that the question was delegated to the common council, who were empowered in their discretion to assess the benefits. And it was further held that when so assessed the result was final and conclusive, unless impeached for fraud or mistake.

In State v. District Court of Hennepin Co., 33 Minn. 235, 22 N. W. 625, the court had under consideration the constitutionality of the act which provided for the assessment of property benefited by the acquisition of lands for public parks. In sustaining the act as constitutional, and referring specially to the amendment as to an assessment for local improvements upon the property fronting upon such improvements, the court say, at page 245, Justice DICKINSON writing the opinion:

"Neither from the circumstances under which the amendment was adopted, nor from its language, is it considered that its purpose was to wholly abrogate, in respect to such assessments, the requirement that 'all taxes  *  *  *  shall be as nearly equal as may be,' although the basis of assessment, by which equality of apportionment should be sought to be attained, is changed, and the legislature is invested with a discretion to determine the manner in which assessments shall be made.   Noonan v. City of Stillwater, 33 Minn. 198 [22 N. W. 444].   It must still be regarded as the constitutional duty of the legislature to frame its enactments with regard to the principle of equality, and a clear disregard of that requirement would affect the validity of legislative action. But where the legislative discretion has been actually exercised, and a law framed which, in its judgment, is calculated to effect an equal apportionment of the burden of assessment upon the principle of benefits conferred, such legislation cannot be set aside by the courts merely because they may deem the law inexpedient, or not well devised for the purpose of securing in the highest degree equality in the apportionment of assessments.   It is not enough to warrant the courts in declaring the law to be invalid that they may consider that the law may actually fail to accomplish the purpose of equal and just assessment.   It should at least be apparent that the law is framed upon a plan or principle not calculated to result in equality of apportionment, or that in its operation, when carried into effect with honesty, and in the exercise of sound judgment on the part of those who are to execute its provisions, it will produce such gross inequality as cannot be deemed, in a just sense, an apportioning 'as nearly as may be' of the burden, before courts can interfere and declare the enactment void."

In State v. Reis, 38 Minn. 371, 38 N. W. 97, in sustaining the "Street Sprinkling Act," speaking through Justice MITCHELL, the court (at page 374) defined the power of the legislature in reference to special assessments as follows:

"First, it must be levied for a public purpose, for the power of taxation can be exercised for none other; and second, the property on which it is assessed must be peculiarly and specially benefited by the work for which it is levied; third, that it must be apportioned according to some reasonable rule, upon the basis of benefits, ascertained or implied, resulting to the property assessed."

Whether these propositions were correctly applied in that case we need not consider.   We quote them to show that the court recognized the true basis of such assessments.   In State v. Judges

of District Court, 51 Minn. 539, 53 N. W. 800, 55 N. W. 122, it was held that an assessment by the board of public works under the charter of the city of Duluth was void, because the board adopted an arbitrary rule, without regard to benefits. GILFILLAN, C. J., speaking for the court, says, at page 543:

"It is true that in such cases, whether particular property is benefited, and to what extent it is benefited, must be left to the judgment of those whose duty it is to make the assessment, and that, when they have exercised their judgment, their determination, in the absence of fraud or demonstrable mistake of fact, is conclusive. But they must exercise their judgment, and if it appears that they have not done so, but have substituted an arbitrary, inflexible rule instead of their judgment, their work cannot stand."

In that case the board of public works assessed property according to a fixed rule, according to distance and area, without reference to how the respective lots might be affected by the improvement. To the same effect see State v. Brill, 58 Minn. 152, 59 N. W. 989. See also State v. District Court, 68 Minn. 242, 71 N. W. 27.

In the case of City of Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117, the question of jurisdiction in special assessment proceedings for a local improvement being under consideration, the court, MITCHELL, J., say (page 27):

"The one essential to due process of law in the exercise of the power of taxation is that, at some stage of the proceedings, the parties concerned shall have notice and an opportunity to interpose any defense they may have as to either the validity or amount of the tax."

In that case the assessment was sustained upon the ground that the owner had notice and an opportunity to be heard.

In all the cases involving the question of local assessment for public improvements which have been before this court, the statutes under consideration provided for the two essential elements: First, consideration and determination by some properly selected body of the benefits to accrue by the improvements; and, second, suitable notice to the owner of the property, and an opportunity to be heard on the question. And from the reference to those

cases above made it will be seen that although the court has held that the legislature may delegate its power to make such assessments to the various bodies connected with municipal governments, and that the action of such delegated body in reference thereto is final, except in case of fraud or demonstrable mistake of fact, the whole trend of the discussion has centered around those two safeguards of the property owner. And there can be no question that, if any of the statutes before the court had failed to provide a proper method of estimating the benefits as a basis for the assessment and proper opportunity to the owner to be heard thereon, the court would have declared them prohibited by the state constitution as to equality of taxation, notwithstanding the amendment to section 1, art. 9, authorizing assessments for local improvements upon the property fronting upon such improvements.

In the recent case of State v. District Court, 80 Minn. 293, 83 N. W. 183, the powers and duties of the board of public works under provisions of the St. Paul charter were considered. The board had assessed the amount of the cost of paving a street upon the property fronting thereon, and found that each lot was benefited equally per front foot. Following the previous decisions of this court, it was held that the action of the board was final, inasmuch as it appeared that the members of the board had exercised their discretion in arriving at such conclusion. In the closing part of the opinion reference is made to the case of Norwood v. Baker, with the statement that it was not applicable to the case before the court.

Taking up, now, the act which is called in question, we find, from sections 26 and 27, supra: First. That no distinction is made in the class or kinds of water pipes; whether principal feed mains or branch supply pipes, all kinds, of whatever description, being subject to the tax. Second. Each lot in the city of St. Paul, no matter what its location or value or use, whether improved or unimproved, whether large or small, whether in the semicountry or in the city, whether adapted and used for pasturage or a business block,—each "lot" is treated in the same manner, and subject to the same tax, according to its lineal foot frontage. Third. The

tax is not for one year or any specified time, but is to be levied annually, for all time, and is made obligatory on the board of public works. Fourth. This tax is not levied for any particular purpose. When collected, it is to be paid over to the city of St. Paul, for the use of the board of water commissioners; but the law is silent as to whether it is to be expended in repairing the main in front of the lots upon which the tax is levied, or to pay for money advanced by the board of water commissioners for the original construction of the main in front of the lots assessed, or whether it is to be used in payment of the current expenses of the board. Fifth. There is no provision for a hearing upon the question as to whether this tax is equitably distributed, or whether the property so assessed is benefited thereby.

If the amount so assessed is not paid within the time prescribed by law, then this shall become a lien on said real estate, and such real estate shall be sold, as in other cases of delinquent taxes. At no stage of the proceedings is there a hearing or consideration by any lawfully constituted body on the question of the benefits to accrue to the property so assessed, nor is there provided any notice to or opportunity for the lot owner to be heard on the question of benefits. So far as the amount of the tax is concerned, it is specifically fixed, and the owner has no authority, under the provisions of G. S. 1894, § 1588, to call in question the amount of the tax, and a consideration of the equality,' proportion, and benefits is necessarily excluded. In this case the owner of the property answered in the regular tax proceedings, and put in issue the question of benefits, and the court received evidence upon that point, and found that the property was not specially benefited by the laying of such water pipes. Counsel for the state claim that the court had no jurisdiction to that extent, and no authority to make such finding; that the tax was made specific by the act, and was not subject to review.' As already stated, such is our view of the statute and the law, and the finding of the court is immaterial in the disposition of the matter before us.

Applying, now, the test as announced in Norwood v. Baker to those sections of the charter above noted, must they stand or fall? In our opinion, they must fall. To stand against such

test, having refused in this instance to delegate its powers to the municipal authorities as in other cases, and reserving to itself the imposition of the tax, it must appear from the act itself that the legislature exercised its judgment upon those questions which form the fundamental basis of the assessment. No valid tax could be levied for such purpose, except upon the theory that the property was by so much increased in value. In fixing this arbitrary amount to be applied in all cases, under all conditions, for an indefinite time, without opportunity for a hearing or review, is it not self-evident that the legislature did not consider the question of benefits at all? To our mind, the act is so drastic and arbitrary as to show upon its face a complete failure to exercise any judgment whatever upon that question. That a tract of farming land is benefited at all by the fact that a city water conduit is laid in the highway adjoining it is on its face a doubtful proposition. That such tract is equally benefited, according to frontage with improved city property, is on its face absurd. Is a lot worth $200 benefited to the same degree as a lot worth $5,000, or is a vacant lot of equal frontage in the suburbs benefited to the same degree as a tenement block in the city proper? Again, such a tax results in the grossest inequality. The money collected is turned over to the water commissioners, and is presumably applied to a reduction of the annual cost of maintaining the water system. By so much would be reduced the cost of water to the consumers, and the landowner, who may have no use whatever for the water, is compelled to bear part of the cost to those who have.

Without dwelling upon the other arbitrary features of the statute some notice should be given to the claim of the state that this law is within the doctrine of Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. 521, and Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921; that is, the legislature has prescribed a certain district within which it has authority arbitrarily to levy assessments to meet the cost of the improvement. It is true that the legislature may cut out a district, and levy the cost of certain improvements therein; but it is stated in Spencer v. Merchant:

"In determining what lands are benefited by the improvement,

the legislature may avail itself of such information as it deems sufficient, either through investigations by its committees or by adopting as its own the estimates or conclusions of others."

"The question of special benefit and the property to which it extends is of necessity a question of fact, and when the legislature determines it in a case within its general power, its decision must, of course, be final. * * * We are not at liberty to say that the tax on the property covered by the law of 1881 was imposed without reference to special benefits. * * *"

The court there recognized the principle that there was a limit to the legislative power. It has been claimed that the decision in Parsons v. District of Columbia rests upon the theory that the fourteenth amendment does not apply to the national government, and that the power of congress is practically unlimited as to taxation within the District of Columbia. Whatever may have been the ground of distinction it seems clear to us that the Parsons case was not considered controlling on the question before the court in Norwood v. Baker.

It may be granted, then, that when the legislative judgment is properly exercised, the legislature may provide for a public improvement, as the construction of a highway or bridge, which naturally would be specially beneficial to some certain community, and may charge the cost and maintenance of the same upon the property of a certain defined district. But the provisions of the city charter make no attempt at such a purpose. This tax of ten cents per foot on all pipes, present and future, has no reference to the adoption or construction of a system of waterworks for the property owners along the line of the pipe. The district, if any be defined, is the city of St. Paul, and the beneficiaries are the inhabitants thereof.

The stake driven by the decision in Norwood v. Baker is timely. Judicial expression on the subject was indefinite. There was a tendency to lose sight of the equitable basis which justifies the assessment upon private property of the cost of public improvements. The arbitrary act of the legislative body was often accepted as final, without regard to its justice. It is to be hoped that the highest court of the land has spoken finally, and will not recede from its position. For the reason that the statute in

82 M.—26

question embraces an arbitrary system of taxation, without regard to benefits, provides for no method of determining the question of benefits, and no opportunity to be heard in reference thereto, and for the reason that from the face of the act it appears that the legislature, in its adoption and passage, did not consider or take into account the benefits to accrue to the property upon which such assessment was levied, we hold that the statute is invalid, because it is, in effect, a taking of private property, under the guise of taxation, without just compensation, and without due process of law.

The cause is remanded, with directions to the court to modify its order for judgment by deducting the amount of water-frontage tax.

A reargument having been granted, the following opinion was filed on June 18, 1901:

LEWIS, J.

The only question before the court in this case was the bearing of the federal constitution upon Sp. Laws 1885, c. 10, §§ 26, 27.

The decision formerly reached by this court was based wholly upon what were believed to be the principles announced in the case of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187. Those principles are that the exaction from private property of the cost of public improvements in substantial excess of the special benefits accruing is, to the extent of such excess, a taking of property under the guise of taxation, without compensation, and, further, that when the principle of assessment adopted by the legislature is without reference to the benefits and a just and equal distribution of the burden, no provision having been made for a hearing or review by the property owners, the act is void. Or, as expressed in the mandate issued in that case:

The judgment of the circuit court must be affirmed upon the ground that the assessment was under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the cost of opening the street in question, over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation.

The principles thus announced do not seem to be in conflict with those declared in Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. 521, and Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921. In those and similar cases the legislative power was not recognized as arbitrary and without limit, but those cases rested upon the theory that the legislature does actually exercise its judgment with reference to the subject, which it might otherwise delegate to a proper body. It logically follows, in a case where the rule of assessment provided is arbitrary, without regard to benefits and without the right of review, that the act so providing is in contravention of the federal constitution. Tested by those principles, we held that the water-frontage tax could not be sustained; and now, after a careful reconsideration and review of the cases, were the question one of final jurisdiction·in this court, we feel that we should adhere to the views expressed in the former opinion.

But in the case of French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, and other cases concurrently decided, the federal supreme court has attempted to qualify and limit those principles as applied in Norwood v. Baker. While it does not appear that the court has directly denied the soundness of the rule announced, yet the purpose seems to be, in its later expressions, to hold that the principle will not apply when in conflict with the systems of taxation as adopted by a state, unless, in some special case, peculiar and extraordinary hardship is the result. In other words, it is not the principle or rule of assessment which is the test of the validity of the state act, but, rather, the effect of the application of the rule in particular cases. It may be a sound rule in one case, and not in another. It would be useless at this time to further attempt to define the position of the federal court as expressed in its later decisions.

It is sufficient to say that we are in doubt as to the effect of its holdings. Our state constitution authorizes the special assessments provided by the statute, and such statute has been held valid, under the constitutional provision, by this court in State v. Robert P. Lewis Co., 72 Minn. 87, 75 N. W. 108. It is possible that this fact may cause the federal court to sustain the statute, upon

the theory that it is a system adopted by the state, and that the result of such an assessment cannot be extraordinary or of such unusual hardship as to come within the limitation applied in Norwood v. Baker. The views of the court, however, have not been expressed with sufficient clearness to warrant us in assuming that our understanding of its decision in Norwood v. Baker, and our former application of it to the state act, would now be sustained by that court. We have, therefore, decided to reverse our former decision; and we are influenced in this conclusion somewhat by the fact that the property owner may cause our conclusion to be reviewed by the proper final tribunal, whereas such privilege would be denied the city were the former ruling adhered to.

The decision heretofore filed is reversed, and the order of the trial court affirmed.

START, C. J.

I concur in the result, on the ground that the case is ruled by State v. Robert P. Lewis Co., 72 Minn. 87, 75 N. W. 108, and Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. 521.