Opinion of the Justices of the Supreme Court to the Governor in the Matter of the Metropolitan Park Loan.

(1) *Constitutional Law. Metropolitan Park Commissioners.*

Gen. Laws, 1909, cap. 238, §§ 7 and 8 "of the Metropolitan Park Commissioners" providing for the appointment of commissioners to determine the proportion in which the cities and towns constituting the metropolitan park district, shall annually pay money into the state treasury to meet the requirements and expenses under said act as estimated by the general treasurer and commissioners, and providing that the award of the commisioners after being accepted by the superior court, shall be final and binding on all parties and that the sum so estimated shall be included in the assessment of the annual state tax against the said towns and cities, is not obnoxious to Cons. R. I. Art. I, § 2, "the burdens of the state ought to be fairly distributed among its citizens," nor to Art. I, § 15, "the right of trial by jury shall remain inviolate," nor to Art. I, § 16, "private property shall not be taken for public uses without just compensation," nor to Art. IV, § 2, as a delegation of legislative power, nor to U. S. Cons. Art. XIV of amendments, "nor shall any state deprive any person of life, liberty or property, without due process of law."

(2) *Police Power. Constitutional Law.*

Cap. 238, Gen. Laws, 1909, contemplates the improvement and conservation of the public health, and was passed in exercise of the police power of the state. It is therefore entitled to a liberal construction.

(3) *Constitutional Law. Burdens of the State.*

How the burdens of the State shall be fairly distributed, is a question of a purely legislative character, with which the judicial department has no concern, where the legislative discretion has been exercised honestly and in good faith and not for the purpose of personal oppression under color of law.

(4) *Constitutional Law. Metropolitan Park Loan.*

There is no constitutional objection to the authorization of the legislature by the people, to provide for State bonds not to exceed $300,000 for the acquirement and improvement of real estate for public reservations and parks in the metropolitan park district; the amount expended to be repaid to the state in accordance with the provisions of Gen. Laws, 1909, cap. 238.

(5) *Constitutional Law. Local Self-Government.*

The State constitution is silent as to local government and nowhere attempts to restrain the power of the legislature over the various cities and towns.

(6) *Metropolitan Park Loan.*

The obligation of repayment of amounts expended under Gen. Laws, 1909, cap. 238, and under the resolution referred to in a request for an opinion of the court, falls only upon the cities and towns within the metropolitan park district.

April 17, 1912.

*To His Excellency, Aram J. Pothier, Governor of the State of Rhode Island and Providence Plantations:*

We have received from Your Excellency a request for our opinion upon the following questions, viz.:

"1.   Are Sections 7 and 8 of Chapter 238 of the General Laws, 1909, unconstitutional and void because in violation of any provision of the State or Federal constitution, especially Article I, Sections 2, 15 and 16, and Article IV, Section 2 of the State Constitution, and that portion of Article XIV of amendments to the Federal constitution as follows: . . . 'nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'

(1)    "2.   If the foregoing question is answered in the negative, is there any constitutional objection to the authorizations and directions in the following resolution now pending in the General Assembly:

." 'RESOLVED:   That the following proposition be submitted to the people for their approval or rejection at the general election to be held on the Tuesday next following the first Monday in November, 1912.

" 'METROPOLITAN PARK LOAN.

" 'Shall the General Assembly be authorized and directed to provide for the issue of state bonds not to exceed the amount of three hundred thousand dollars for the acquirement and improvement of real estate for public reservations and parks in the Metropolitan Park District of Providence Plantations; the amount thereof expended to be repaid to the state in accordance with the provisions of Chapter 238 of the General Laws.   These bonds to be issued from time to time in such amounts and upon such terms as the General Assembly may hereafter determine?'

"3. Does the obligation of repayment of amounts expended either under said Chapter 238 and the additions and amendments thereto, or under said resolution fall upon the state as a whole or only upon the cities, towns and voting districts constituting the Metropolitan Park District of Providence Plantations?"

In response to these questions we have the honor to submit the following opinion:

Gen. Laws, 1909, cap. 238, is the first act in said compilation of the statutes that appears under "Title XXIII of FORESTRY and PARKS " and is itself entitled: "Of the Metropolitan Park Commissioners." An examination of its provisions discloses the fact that it deals with the "advisability of laying out ample open spaces for the use of the public," within the Metropolitan Park District of Providence Plantations, which includes the cities of Providence, Pawtucket, Central Falls and Cranston; the towns of East Providence, Warwick, Johnston, North Providence, Lincoln, Barrington and the voting districts numbers three, four, and five in the town of Cumberland; that these open spaces are to be used for exercise and recreation and for intercommunication between them and adjacent streets and highways. It thus appears that the chapter contemplates the improvement and conservation of the public health by encouraging out of door exercise and recreation in parks and parkways within its most densely populated area. It is therefore apparent that the statute in question was passed by the legislature in exercise of the police power of the State. In such circumstances the statute is entitled to a liberal construction in order that its beneficial influence may not be impeded. The seventh and eighth sections of the chapter, towards which our attention is especially directed by the questions under consideration, respectively read as follows: "Sec. 7. The superior court shall, on the application of the said metropolitan park commissioners, and after notice to each of the cities and towns hereinbefore designated, appoint three commissioners who shall not be residents of such

cities and towns, who shall, after the notice and hearing, and in such manner as they shall deem just and equitable, determine the proportion in which each of such cities and towns shall annually pay money into the treasury of the state for the term of five years next following the year of the first issue of said scrip or certificates of indebtedness, to meet the interest and sinking-fund requirements for each of said years as estimated by the general treasurer of the state, and to meet the expenses of preservation and necessary care of said public reservations as estimated by the metropolitan park commissioners and certified by them to the general treasurer, and any deficiency in the amount previously paid in as found by said treasurer, and shall return their award into said court; and when said award shall have been accepted by said court the same shall be final and conclusive adjudication of all matters herein referred to said commissioners and shall be binding on all parties. Before the expiration of said term of five years, and every five years thereafter, three commissioners who shall not be residents of any of the cities or towns constituting the metropolitan park district shall again be appointed as aforesaid, with the same powers and duties for the next succeeding term of five years: *Provided*, that no assessment shall be levied for the purposes of this chapter in any one year upon any city or town in excess of a sum equal to one-half mill on the dollar of the valuation thereof. The superior court shall have jurisdiction in equity to enforce the provisions of this chapter and shall fix and determine the compensation of all commissioners appointed by said court under the provisions hereof.

"Sec. 8. The amount of money required each year from each city and town of the said metropolitan park district of Providence Plantations to meet the interest, sinking-fund requirements, and expenses aforesaid for each year, and the deficiency, if any, shall be estimated by the general treasurer in accordance with the proportion determined as aforesaid, and shall be included in and made a part of the sum charged in such city or town, and shall be assessed upon it in the

apportionment and assessment of its annual state tax. The general treasurer shall in each year give notice to each city and town aforesaid of the amount of such assessment, and each of such cities and towns shall pay its respective assessments, so determined as aforesaid, into the state treasury at the time required for the payment of, and as a part of, its state tax."

The foregoing provisions are not in conflict with the constitution of Rhode Island, Art. I, § 2, which reads as follows: "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

In the case of *In re Dorrance Street*, 4 R. I. 230, Ames, C. J., at p. 249, used the following language in reference to the last clause of the foregoing section: "We will not stop to notice the very general language and declaratory form of this clause; setting forth principles of legislation rather than rules of constitutional law—addressed rather to the general assembly by way of advice and direction, than to the courts, by way of enforcing restraint upon the law-making power. We do not mean to say that a law, purporting to impose a tax or burden of some sort upon the citizen, may not be in its distribution of the burden, both in design and effect, so outrageously subversive of all the rules of fairness, as not to come so far within the purview of this general clause, as to enable the court to save the citizen from oppression by declaring it to be void. But evidently a wide discretion with regard to the distribution of the burdens of state amongst the citizens was intended to be reposed in the general assembly by the will of the people, as signified in this clause of the constitution. The form is 'ought to be,' the word is '*fairly*' distributed, not 'equally' even—unless equality be fair, which it is not always in any sense, and never is in some senses; and especially, the words are not 'equally upon property,' or words to that effect, as in the constitution of Louisiana." . . .

"Indeed, the language in question can hardly be said to impose any restriction upon the assembly at all, except what would be imposed by the fact of our free institutions, and the general principles of constitutional law, here and everywhere in this country prevalent. Had the constitution been wholly silent upon this subject, a greater latitude could not have been given by these principles, than seems to be studiedly implied in the form, spirit, and general terms of this sentence." And later at p. 250 he uses these illuminating expressions: "All taxation is more or less unfair, and in any proper sense, even unequal. Perfect fairness would be, to make all those who are benefited by the burdens of the state to bear them, and to extend the burden in due proportion to every person according to this benefit. Take, for instance, the streets of Providence used by all the inhabitants of the state, nay, of the country, who have occasion to resort hither for business, or pleasure, or instruction. The right of every one of these is as ample to use them, and is as ample, in any way, in them, as that of the rich citizen whose property pays a thousand dollars a year towards the enormous expense of their maintenance; and yet the law casts the entire expense of their maintenance upon those who happen to reside within the limits of certain jurisdictional lines, altered, from time to time, as convenience may require."

The reasoning employed in the foregoing opinion is applicable to the consideration of the sections of the statute involved in the present inquiry. The question: how shall the burdens of the state be fairly distributed, is one of a (3) purely legislative character to be answered by the law-making branch of the government in the exercise of a wise and wide legislative discretion, with which the judicial department has no concern, and over which it will not attempt to assume control where the same has been exercised honestly and in good faith and not for the purpose of personal oppression under color of law. As was said by Durfee, C. J., in *Cleveland* v. *Tripp*, 13 R. I. at p. 61, *et seq*: "Without doubt, the propriety of any given tax and the modes in which it shall be

apportioned and assessed are legislative matters, with which the courts will not interfere unless the legislature has palpably transgressed some limitation of the constitution. . . . But our constitution is extremely latitudinarian. It contains no restriction except what is implied in the declaration that 'the burdens of the State ought to be fairly distributed;' and this declaration, as was said in *In the matter of Dorrance Street*, 4 R. I. 230, 249, expresses no more than would be implied without it, 'from the fact of our free institutions and the general principles of constitutional law.' To entitle us to hold that the statute authorizing these assessments is unconstitutional, we ought to be satisfied, not only that fairer modes of assessment might be devised, but that the prescribed mode is indefensibly unfair; for in a matter of legislative policy, it will not do for the court to substitute their own judgment for that of the General Assembly, and to convict the General Assembly of fatal error simply because they differ from it in opinion." In the sections under consideration there is nothing to indicate any abuse of legislative discretion in the premises. Neither are the provisions of the sections in conflict with the constitution of the State, Art. I, § 15, which reads as follows: "The right of trial by jury shall remain inviolate." As this court decided in *Bishop* v. *Tripp*, 15 R. I. at p. 469: "The plaintiff also contends that the statutes authorizing the (sewer) assessments are void because they do not give the assessed the right of appeal, with trial by jury, and are therefore in conflict with the Constitution of the State, Article I, § 15, which declares that the right of trial by jury shall remain inviolate. Assessments for benefits have always been regarded in this State, and, so far as we know, in other states, as a species of taxation; and though tax assessments were before, and have been since, the adoption of the Constitution, subject to revision in the courts, they have never, to our knowledge, been subject to revision by jury trial. *Crandall* v. *James*, 6 R. I. 144. Therefore, we do not think the statutes are obnoxious to this objection. The Constitu-

tion requires simply the conservation, not an extension, of the right of jury trial." Nor do said provisions conflict with Section 16 of said Article I.: "Private property shall not be taken for public uses, without just compensation." "It has been observed that it is by no means easy to trace the dividing line between the power of taxation and the right of eminent domain, and it is true that both rest on substantially the same foundation, that is, both are exercises of the sovereign power to take private property for public use. In other respects, however, there is a very clear distinction which may readily be pointed out. Taxation exacts money or services from individuals as and for their respective shares of contribution to any burden; operates on a community or on a class of persons in a community; and is governed by some rule of apportionment. On the other hand, private property taken for public use by virtue of the right of eminent domain is taken, not as the owner's share or contribution to the public burden, but as so much beyond his share, and the exercise of this right operates on an individual and has no reference to the amount or value exacted from any other individual or class of individuals. And, again, special compensation is required to be made when property is taken in the exercise of the right of eminent domain, because the government is the debtor to the amount of the value of the property thus taken; but the payment of taxes is a duty of the citizen, and creates no obligation on the part of the government otherwise than to make a proper application of the taxes paid. The clause of the constitution requiring compensation to be made when private property is taken for public use is not a limitation on the taxing power, but it is held to guard against illegal exactions disguised under the name of taxation." 27 Amer. & Eng. Ency, 585 and cases cited.

It is apparent from an inspection of the foregoing sections that they make provision for the repayment by the cities and towns within the Metropolitan Park District, to the state, of money advanced and expended by the State in the

acquirement and maintenance of public parks and parkways within said district for the general benefit of the public, and the particular benefit of the residents of the cities and towns within said district whose proximity to the parks enables them to enjoy the benefits thereof with the expenditure of less time and money than those less fortunately situated because more remote from these sources of improvement and enjoyment. These are material compensations beyond and in addition to the enhanced value of property in the neighborhood of such public improvements.

The sections alluded to are not in conflict with the Constitution of Rhode Island, Art. IV, § 2, which reads as follows: "Sec. 2. The legislative power, under this constitution, shall be vested in two houses, the one to be called the senate, the other the house of representatives; and both together, the general assembly. The concurrence of the two houses shall be necessary to the enactment of laws. The style of their laws shall be, *It is enacted by the General Assembly as follows:*" The question, without doubt, is put for the purpose of inquiring whether the general assembly has attempted therein to delegate its legislative power. We do not so understand the provisions of the sections. The commissioners appointed are to hear and determine what proportion of the total amount expended each city and town shall anually pay into the treasury of the state. Manifestly this is not a legislative duty, but is a duty similar to that imposed upon an auditor, as for example, to ascertain and state the assets and liabilities of the firm, including the accounts of the members thereof in the winding up of a partnership, or in the disentanglement of complicated accounts between litigants. As we said in the case of *Blais* v. *Franklin*, 31 R. I. at p. 115: "While the act confers on the commissioners certain authority and discretion as to their execution of the law, it does not confer on, or delegate to, the commissioners the power to make the law itself, nor to use any discretion as to what the law shall be." In the present case the proportion that each city and town shall pay is

dependent upon the amount of benefits received by it so that the question is largely one of computation involving arithmetical rather than legislative powers. The sections are not in conflict with that portion of Article XIV of amendments to the Federal Constitution which reads as follows: "nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." We presume that the question involving the consideration of the above amendment to the federal constitution is similar to that propounded to us in the case of *Blais* v. *Franklin, supra,* p. 131: "Neither party in interest is heard as to the necessity of building a bridge nor as to the expense of the work or the kind, size or style of the bridge. The only hearing the cities of Pawtucket and Central Falls get is as to the apportionment of the expense." In the statute under consideration no provision is made whereby the cities and towns within the Metropolitan Park District may be heard as to the necessity for parks or parkways therein nor as to the size, style or cost of the same, nor as to the expense of their maintenance. The only hearing they will have will be the one concerning the apportionment of the expense upon them. The answer to this question will be the same as it was in the case last referred to: "There is no merit in this contention. No notice is required to be given property owners or municipal corporations respecting those matters which the legislature itself determines. *Spencer* v. *Merchant,* 125 U. S. 345; *Meier* v. *St. Louis,* 180 Mo. 391.

"As was said by Mr. Justice Brewer in *Williams* v. *Eggleston,* 170 U. S. 304, at p. 310, *et seq:* "It is further contended that the acts of May 24, 1895, and June 28, 1895, are in conflict with that portion of the Fourteenth Amendment which forbids the depriving of any person of life, liberty or property without due process of law, because, first, 'they deprive the town of the right to perform its town duties by officers of their own choosing which is contrary to the settled practice and law of the State, and arbitrarily destroys the

right which those towns had before the constitution of Connecticut was adopted and which was not taken away by that instrument; and, secondly, because the acts provide for arbitrarily taking the property of the inhabitants of Glastonbury without proper notice of any proceeding under which the property is to be taken and without opportunity to be heard.' Whatever may have been the practice of the State in the past it cannot be doubted that the power of the legislature over all local municipal corporations is unlimited save by the restrictions of the state and federal constitutions; and, that these acts in no way violate any provision of the state constitution is settled by the decision of the state Supreme Court. *Backus* v. *Fort Street Union Company*, 169 U. S. 557, 566, and cases cited. It it true that there was a division of opinion between the members of the state Supreme Court, but such division, although a close one, does not prevent the opinion of the majority from becoming the decision of the court, and as such conclusive upon us. When the state court decides that municipal corporations within the territorial limits of the State are subject to the control of the state legislature, and that its act in creating for certain purposes a new corporation, and merging therein five separate towns, was valid, this court cannot hold that the State court was mistaken in its construction of the state constitution or in its declaration as to the extent of the power of the legislature over municipal corporations.

" 'Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed amendment. And in so doing it is not compelled to give notice to the parties resident within the territory or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited. *Spencer* v. *Merchant*, 125 U. S. 345, 346; *Parsons*

v. *District of Columbia*, 170 U. S. 45. It should be noticed that no question is presented as to the necessity of notice before any property tax is cast upon the citizen. The only question is as to the power of the legislature to cast the burden of this improvement upon the five towns, towns which may have been already judicially determined to be towns benefited thereby. Although the apportionment made between the towns was not that determined by the judicial proceedings, yet it was one of which certainly the town of Glastonbury cannot complain, for the judicial apportionment was as to it reduced by the legislative act. In casting this burden upon the towns the legislature did not proceed without a hearing from the towns, for their representatives were in the legislature and took part in the proceedings by which the act was passed. So they had an opportunity to be heard, if such hearing was necessary, prior to the enactment of the law.'"

(4)    We see no constitutional objection to the authorization and directions contained in the foregoing resolution, now pending in the general assembly. The people of the state may well authorize the incurring of a state debt by the legislature, the proceeds whereof are to be expended in a well defined portion of the state to be repaid by the cities and towns within which the same has been expended in proportion to the amounts expended therein. Objection has been made that such a resolution is an interference with local self-government, and in support of this contention the cases of *Board of Park Commissioners* v. *Common Council of Detroit*, 28 Mich. 228; *and State ex rel. Gerry* v. *Edwards et al.* 42 Mont. 135, have been relied upon. The sufficient answer to this objection is that the Constitution of Rhode Island differs from those of Michigan and Montana in that it contains no reference to local government and nowhere attempts to restrain the power of the legislature over the various cities and towns within it. " 'The law-making power of the State,' it is said in one case, 'recognizes no restraints, and is bound by none, except such as are imposed

(5)

by the constitution.' That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity; and is therefore the paramount law. Its object is not to *grant* legislative power, but to *confine* and *restrain* it. Without the constitutional limitations, the *power* to make laws would be *absolute.*" Cooley, Const. Lim. (7th ed.) p. 241.

In answer to your last question we have the honor to reply that by the terms of said Chapter 238 and of the resolution hereinbefore referred to, the obligation of repayment falls only upon the cities and towns within the Metropolitan Park District of Providence Plantations.

> EDWARD CHURCH DUBOIS,
> CLARKE H. JOHNSON,
> C. FRANK PARKHURST,
> WILLIAM H. SWEETLAND,
> WALTER B. VINCENT.